**EX PARTE Adam Wayne INGRAM, Appellant**

**NO. PD-0578-16**

Court of Criminal Appeals of Texas.

Delivered: June 28, 2017

Rehearing Denied September 27, 2017

ATTORNEYS FOR APPELLANT: Donald H. Flanary III, Goldstein, Goldstein & Hilley, 310 S. St. Mary's St., 29th Floor Tower Life Bldg., San Antonio, TX 78205.

ATTORNEYS FOR THE STATE: Patrick Ballantyne, Assistant Criminal District Attorney, 101 W. Nueva St., 7th Floor, San Antonio, TX 78205, and Stacey Soule, Austin, TX.

Keller, P.J., delivered the opinion of the Court in which Hervey, Richardson, Keel, and Walker, JJ., joined.

This is an appeal from the denial of relief on a pretrial habeas application. In it, appellant raises various facial challenges to the constitutionality of the pre-2015 version of subsection (c) of the "Online Solici-tation of a Minor" statute. Some of these challenges depend on the interaction between subsection (c), which proscribes the offense, and subsection (d), which provides that certain facts are "not a defense to prosecution." Appellant also contends that subsection (a)'s definition of "minor," which includes "an individual who represents himself or herself to be younger than 17 years of age," makes subsection (c) overbroad because the definition results in penalizing constitutionally protected role-play between adults. Appellant also contends that subsection (c) places an undue and impermissible burden on interstate commerce in violation of the United States Supreme Court's Dormant Commerce Clause jurisprudence. We conclude that appellant's claims are without merit because (1) constitutional attacks on free-standing anti-defensive issues are not cognizable on pretrial habeas, (2) without the anti-defensive issues and under a narrowing construction of the word "represents," subsection (c) is not unconstitutionally overbroad, and (3) subsection (c) does not violate the Supreme Court's Dormant Commerce Clause jurisprudence. Consequently, we affirm the judgments of the courts below.

## I. BACKGROUND

Appellant was indicted for the offense of "Online Solicitation of a Minor" under the pre-2015 version of Penal Code § 33.021(c). The indictment provided that, on or about May 21, 2013, appellant,[1]

> with the intent that [the complainant], a minor, would engage in sexual contact, sexual intercourse, and deviate sexual intercourse with [the complainant], did knowingly solicit over the internet by

---

1. References to "the complainant" and "appellant" are substituted for the identity of those individuals in the indictment. We note that the indictment appears to allege that appellant had the intent to cause the complainant to have sex with the complainant. Whether this constitutes a defect in the indictment is not before us.

electronic mail or text message or other electronic message service or system, or through a commercial online service, [complainant] to meet [appellant].

Appellant filed a pretrial habeas application, raising various facial constitutional challenges to the statute. The trial court denied the application, and appellant filed an interlocutory appeal. Addressing and rejecting all of appellant's constitutional complaints on the merits, the court of appeals affirmed the trial court's order denying habeas relief.[2]

## II. ANALYSIS

### A. The Statute

Before September 1, 2015, § 33.021 provided in relevant part:

(a) In this section:

(1) "Minor" means:

(A) an individual who represents himself or herself to be younger than 17 years of age; or

(B) an individual whom the actor believes to be younger than 17 years of age.

* * *

(c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

* * *

(d) It is not a defense to prosecution under Subsection (c) that:

* * *

(2) the actor did not intend for the meeting to occur; or

(3) the actor was engaged in a fantasy at the time of commission of the offense.[3]

### B. Cognizability

Appellant contends that Subsections (d)(2) and (d)(3) render the online solicitation statute unconstitutional for a variety of reasons. He claims that the provisions impermissibly negate the *mens rea* requirement of the statute in violation of the right to due process, deny a defendant his Sixth Amendment right to present a defense, help render the online solicitation statute unconstitutionally overbroad in violation of the First Amendment, and render the statute unconstitutionally vague under the Fifth and Fourteenth Amendments.[4] We conclude that none of these complaints are cognizable in a pretrial habeas proceeding.

 Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy.[5] This remedy is reserved "for sit-

2. *Ex parte Ingram*, No. 04-15-00459-CR, 2016 WL 1690493, *4-7, 2016 Tex. App. LEXIS 4331, *9-18 (Tex. App.—San Antonio April 27, 2016) (not designated for publication).

3. TEX. PENAL CODE § 33.021 (West 2014). We note that another provision makes it a defense to prosecution if the actor was (1) married to the minor or (2) was not more than three years older than the minor and the minor consented to the conduct. *Id.* § 33.021(e).

4. Appellant also claims violations of counterpart provisions in the Texas Constitution. However, he does not argue that the state constitutional provisions provide greater or different protection than their federal counterparts. Consequently, we will not separately address his state constitutional claims. *See Jenkins v. State*, 493 S.W.3d 583, 618 n.102 (Tex. Crim. App. 2016); *Murphy v. State*, 112 S.W.3d 592, 596 (Tex. Crim. App. 2003).

5. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010).

uations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review."[6] Except when double jeopardy is involved, pretrial habeas is not available when the question presented, even if resolved in the defendant's favor, would not result in immediate release.[7] Moreover, pretrial habeas is generally unavailable "when the resolution of a claim may be aided by the development of a record at trial."[8] The only recognized exception to the general prohibition against record development on pretrial habeas is when the constitutional right at issue includes a right to avoid trial, such as the constitutional protection against double jeopardy.[9]

■ Ordinarily, a facial challenge to the statute defining the offense can be brought on pretrial habeas,[10] and we have specifically recognized the ability to bring an overbreadth challenge.[11] But, as we shall see, anti-defensive issues pose complications that we have not before addressed, and we ultimately conclude that a challenge to a freestanding anti-defensive issue is not cognizable, even when it is a facial challenge.

■ The "law applicable to the case" in a criminal prosecution always includes the elements of the charged offense, but there are other types of issues, such as a defense, that become law applicable to the

case if raised by the evidence. On occasion, evidence may raise an issue that is anti-defensive—an issue that benefits the State's position in the case but is not something the indictment required the State to prove from the outset. Perhaps the most common anti-defensive issue is voluntary intoxication: "Voluntary intoxication does not constitute a defense to the commission of a crime."[12] An instruction on the nondefensive nature of voluntary intoxication is appropriate when "there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions."[13] We think this pronouncement of the standard for when to submit an anti-defensive issue is not unique to the issue of voluntary intoxication. Because an anti-defensive issue is not something that has to be alleged in the indictment, and is not part of the State's *prima facie* case, an instruction on such an issue is appropriate only when some evidence at trial raises it. Only at that time does an anti-defensive issue become law applicable to the case.

■ It follows that an anti-defensive issue is not law applicable to the case at the pretrial habeas stage. That is a problem for appellant because, even in the First Amendment context, a defendant has standing to challenge a statute only if it is being invoked against him.[14] At this junc-

---

6. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001).

7. *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010).

8. *See Weise*, 55 S.W.3d at 620.

9. *See Ex parte Perry*, 483 S.W.3d 884, 899 & nn.80-81 (Tex. Crim. App. 2016) (plurality op.) (citing cases involving double jeopardy claims in which record development was allowed and cases involving other claims in which it was not).

10. *Ellis*, 309 S.W.3d at 79.

11. *Perry* 483 S.W.3d at 902 (majority op.).

12. Tex. Penal Code § 8.04.

13. *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994).

14. *See State v. Johnson*, 475 S.W.3d 860, 864 n.12 (Tex. Crim. App. 2015) (distinguishing jurisdictional injury-in-fact requirement from prudential requirement that party generally may not assert the rights of others); *Kothe v.*

ture, subsections (d)(2) and (d)(3) have not been invoked in appellant's case, and, therefore, he cannot meet the basic standing requirement necessary to obtain relief.

Of course, it is also true that defensive issues (*e.g.*, defenses and affirmative defenses) are not law of the case until raised by the evidence,[15] yet they may sometimes be taken into consideration when determining whether a statute is unconstitutionally vague or overbroad.[16] But that is because a defensive issue might narrow the scope of a statute that has been invoked against the defendant. That does not mean that a defendant can raise a pretrial habeas challenge to provisions that arguably broaden the scope of a statute when those provisions have not been shown to be applicable to his case. If an anti-defensive issue is merely a limitation on the scope of a defensive issue,[17] then it may be relevant to how much the defensive issue narrows the statutory provisions proscribing the offense with which the defendant was charged. But that is not the case here because the anti-defensive issues are freestanding—they are not attached to a defensive issue.

■ Standing concerns aside, the fact that a freestanding anti-defensive issue does not become law applicable to the case until raised by the evidence means that a constitutional challenge involving such an issue is one that requires record development to substantiate. As we have explained above, unless the defendant relies upon a constitutional right that includes a right to avoid trial,[18] developing the record at a pretrial habeas proceeding is inappropriate, and so it follows that the proper remedy would be to litigate the constitutionality of a freestanding anti-defensive issue at trial if the issue is raised by the evidence at trial. Appellant's situation is similar in relevant respects to the *in pari materia* claim alleged on pretrial habeas by the defendant in *Ex parte Smith*.[19] In that case, the defendant claimed a due process right to be prosecuted under a special statute that he claimed was *in pari materia* with the statute under which he was charged.[20] We held that such a claim was "not yet ripe for review" because a "decision on the *in pari materia* claim would be premature before the State has had an opportunity to develop a complete factual record during a trial," and we were not aware of any authority that would require the State to prove its case before that time." [21]

■ Moreover, a determination that a freestanding anti-defensive issue is uncon-

---

*State*, 152 S.W.3d 54, 59 n.7 (Tex. Crim. App. 2004) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) for the proposition that standing involves two inquiries (1) whether the defendant has alleged an injury in fact, and (2) whether he is asserting his own legal rights rather than basing his claim on the rights of third parties).

15. *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007).

16. *See Long v. State*, 931 S.W.2d 285, 294-95 (Tex. Crim. App. 1996) (discussing affirmative defense of activity protected by the First Amendment). *See also Faust v. State*, 491 S.W.3d 733, 767 (Tex. Crim. App. 2015) (Newell, J., dissenting) (citing "speech only" defense).

17. *See e.g.*, Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ § 8.05(e) ("It is no defense that a person acted at the command or persuasion of his spouse, unless he acted under compulsion that would establish a defense under this section.").

18. *See Perry*, 483 S.W.3d at 896 (plurality op.) (concluding that double jeopardy claims and some separation of powers claims rely upon rights that include a right to avoid trial).

19. 185 S.W.3d 887 (Tex. Crim. App. 2006).

20. *Id.* at 893.

21. *Id.*

stitutional (in combination with the statute proscribing the offense)—even on its face—would not terminate a defendant's prosecution and, so, would not result in immediate release. If and when a free-standing anti-defensive issue were held to be facially unconstitutional, the remedy would be to sever the provision from the statute,[22] and applying that remedy at the pretrial habeas stage would not terminate the prosecution. In fact, unless the State were to actually allege the anti-defensive issue in the indictment, holding such an issue unconstitutional would not affect any of the State's indictment allegations.[23] And even if, in a given case, the State might need an anti-defensive issue to procure a conviction for the charged offense, that fact would not be known until the evidence in the defendant's case was presented at trial.

■ We conclude that appellant's claims that revolve around the anti-defensive issues—the *mens rea*, right to present a defense, and vagueness claims—are not cognizable on pretrial habeas. We also conclude that appellant's overbreadth and dormant commerce claims, to the extent that they depend on the anti-defensive issues, are not cognizable.

### C. Overbreadth

#### 1. *Standards*

■ But appellant's overbreadth claim does not rely solely upon the anti-

defensive issues, and to the extent it does not, it is cognizable.[24] "Overbreadth" is a First Amendment doctrine that allows a facial challenge to a statute even though the statute might have some legitimate applications.[25] "The overbreadth of a statute must be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."[26] To be overbroad, a statute must prohibit a substantial amount of protected expression, and the danger that the statute will be applied in an unconstitutional manner "must be realistic and not based on fanciful hypotheticals."[27] The person challenging the statute must demonstrate from its text and from actual fact that a substantial number of instances exist in which the statute cannot be applied constitutionally.[28]

■ The first step in an overbreadth analysis is to construe the challenged statute.[29] We construe a statute in accordance with the plain meaning of its text unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[30] In determining plain meaning, we can consult dictionary definitions, and we read words in context, applying rules of grammar and giving effect to every word in the text if reasonably possible.[31] Text in a statute is ambiguous if it "may be understood by reasonably well-informed persons

22. See *Perry*, 483 S.W.3d at 903 (majority op.) (severance should be used to cure a facial constitutional defect if feasible).

23. See *Smith*, 185 S.W.3d at 893 ("Initially, we note that the indictment is valid on its face.").

24. See *supra* at n.11 and accompanying text.

25. *Perry*, 483 S.W.3d at 902 (majority op.).

26. *Id.* (internal quotation marks omitted).

27. *Id.* (internal quotation marks omitted).

28. *Id.*

29. *Id.*

30. *Id.*

31. *Id.* at 902-03.

in two or more different senses."[32] If the text is ambiguous or the plain meaning leads to absurd results, then we can consider extratextual factors including the object sought to be attained, the legislative history, and the consequences of a particular construction.[33] In addition, we have a duty to employ, if possible, a reasonable narrowing construction in order to avoid a constitutional violation.[34]

## 2. Definition of "Minor"

Appellant contends that the pre-2015 statute's definition of "minor" creates an overbreadth problem by allowing the criminal provisions of the online solicitation statute to apply to protected speech between adults. As we set out above, the pre-2015 statute defines "minor" as:

(A) an individual who represents himself or herself to be younger than 17 years of age; or

(B) an individual whom the actor believes to be younger than 17 years of age.[35]

The definition in (B) appears to be self-explanatory, but further discussion is needed for the definition in (A). What does it mean to say that someone "represents" himself or herself to be younger than 17 years of age?

Without citing any definitions, appellant suggests that it means "one or both adults hold themselves out to be a minor." Our research has revealed several possibly applicable definitions of the word "represents." Ballentine's Law Dictionary defines "represent" to mean "[t]o state as a fact."[36] The Random House Dictionary sets forth many definitions, but there are two that might conform to appellant's claim or fit the statutory language: (1) "to set forth clearly or earnestly with a view to influencing opinion or action or making protest,"[37] and (2) "to set forth or describe as having a particular character."[38] The Oxford English Dictionary likewise sets forth many definitions but contains two that parallel the Random House definitions above: (1) "to place a fact clearly before another; to state or point out explicitly or seriously to one with a view to influencing action or conduct,"[39] and (2) "to describe as having a specified character or quality; to give out, assert, or declare to be of a certain kind."[40] The most recent edition of Black's Law Dictionary does not define "represent," but it does define "representation" as: "a presentation of fact—either by words or by conduct—made to induce someone to act, especially to enter into a contract; especially, the manifestation to another that a fact, including a state of mind, exists."[41]

32. *State v. Schunior*, 506 S.W.3d 29, 34-35 (Tex. Crim. App. 2016).

33. *Perry*, 483 S.W.3d at 903 (majority op.).

34. *Id.*

35. Tex. Penal Code § 33.021(a)(1) (West 2014).

36. *Represent*, Ballentine's Law Dictionary (2010) (definition 1, first subdefinition).

37. *Represent*, Random House Dictionary of the English Language, 2d ed [unabridged], (1987) (definition 10).

38. *Id.* (definition 9) (an explanatory note says that, with this usage, the word is usually followed by "as, to be, etc.").

39. *Represent*, Compact Edition of the Oxford English Dictionary, Vol. II (1971) (definition 2b).

40. *Id.* (definition 3) (an explanatory note says that, with this usage, the word is construed with "as" or "to be" and "with a simple complement.").

41. *Representation*, Black's Law Dictionary (10th ed. 2014) (definition 1).

These dictionary definitions reveal two competing interpretations of "represent." One interpretation of "represent" is to state something as a fact, to be accepted as true. If this meaning attaches to the word "represent," then a person "represents" himself to be under age 17 if he is asserting his age as a matter of fact, to be accepted as true. The other interpretation of "represent" is to describe something as having a certain character or quality. One dictionary-cited example of this definition is when someone "represents himself as a friend." [42] If that meaning attaches, then it might be argued that a person "represents" himself to be under age 17 if he describes himself to be under age 17.

We conclude that extratextual factors support the first interpretation—that a person "represents" his age when he states his age as a fact, to be accepted as true. The pre-2015 version of this statute arose from House Bill 2228, enacted in 2005. As originally filed, the bill defined "minor" in subsection (A) as a person "who is younger than 17 years of age." [43] The language was changed to "who represents himself or herself to be younger than 17 years of age." [44] Representative McCall explained that this change was made because the original bill language could result in punishing someone who honestly thought he was soliciting someone who was an adult but who was really a minor representing himself or herself to be an adult. [45] This legislative history indicates that the "represents" language was intended to prevent the statute from ensnaring individuals who, based on the child's own statements, reasonably thought the child was an adult. Such legislative history is consistent with giving the word "represents" a narrow construction, which would be consistent with the first interpretation. Moreover, the legal dictionaries cited support the first interpretation, and it seems likely that the legislators were thinking of how the word "represent" is generally used in the legal field when it comes to making statements. Finally, construing "represents" under the more narrow first interpretation is consistent with giving statutory language a reasonable narrowing construction to avoid a constitutional violation.

 Having decided that "represents" means to state as a fact, to be accepted as true, we must determine from whose perspective the character of the statement must be viewed. Is it enough, for example, that the speaker intends the statement to be one of fact even if the statement does not convey to a reasonable listener that it is one of fact? Consistent with construing the statute narrowly to avoid a constitutional violation but to effectuate the legislature's purpose, and keeping in mind the legal concept of representation, we conclude that the statement must also be one that a reasonable listener would view as an assertion of fact. [46] That is, a person repre-

**42.** *Represent*, Webster's Ninth New Collegiate Dictionary (1987) (definition 7).

**43.** Bill Analysis, Criminal Jurisprudence Committee, C.S.H.B. 2228 (undated committee report) ("COMPARISON OF ORIGINAL TO SUBSTITUTE").

**44.** *Id.*

**45.** Rep. McCall, Public Hearing, House Criminal Jurisprudence Comm., HB 2228, part 1, 1:02:00-11 (March 22, 2005).

**46.** *See Universal Health Services v. United States ex rel. Escobar*, —— U.S. ——, 136 S.Ct. 1989, 2002-03 & n.5, 195 L.Ed.2d 348 (2016) (discussing materiality with respect to a representation as involving what would induce a reasonable person to assent to a transaction or what would induce the actual person to assent if the defendant knew or had reason to know that the person attached importance to the matter); *Italian Cowboy Partners v. Prudential Ins. Co.*, 341 S.W.3d 323, 337-38 (Tex. 2011) ("Material means a reasonable person

sents himself or herself to be under the age 17 if, in view of the totality of the speaker's statements, (1) the speaker intended to state his or her age as a matter of fact, to be accepted as true and (2) a reasonable person in the listener's shoes would perceive the speaker to be stating his or her age as a fact, to be accepted as true. That does not mean that the representation is true. A police officer could be impersonating an individual under age 17 as part of a sting operation. But, in that example, it does mean that the officer is intending the assertion of underage status to be accepted as true, and that a reasonable person in the defendant's position would believe that underage status was being asserted as fact, to be accepted as true.

### 3. Constitutionality

■ One of the few recognized categories of speech that is "fully outside the protection of the First Amendment" is " 'speech or writing used as an integral part of conduct in violation of a valid crim-

inal statute.' " [47] This is true even if the "conduct in violation of a valid criminal statute" is never completed: "Offers to engage in illegal transactions are categorically excluded from First Amendment protection," [48] and "[m]any long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech ... that is intended to induce ... illegal activities." [49] The Supreme Court has recognized speech as exempt from First Amendment protection when it was the commission of a "sort[ ] of inchoate crime[ ]—[an] act looking toward the commission of another crime" that the legislature can validly punish.[50]

One offense that a legislature can validly punish is sexual assault of a child.[51] That offense occurs in Texas if a person causes a child under age 17 to engage in certain described sexual activities unless the person is not more than three years older than the child or is the spouse of the child.[52] Subsection (c) of the pre-2015 on-

would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question. Pure expressions of opinion are not representations of material fact, and thus cannot provide a basis for a fraud claim. Whether a statement is an actionable statement of 'fact' or merely one of 'opinion' often depends on the circumstances in which a statement is made. Special or one-sided knowledge may help lead to the conclusion that a statement is one of fact, not opinion.") (citations and internal quotation marks omitted); *Little v. Allen*, 56 Tex. 133, 139 (Tex. 1882) ("Under the evidence the court might well have refused to give any charge in reference to the obtaining of the agreement by fraudulent representations; for the evidence does not show that the attorney who made the agreement for Mrs. Allen made any statement whatever calculated to make an undue impression upon any reasonable person.").

47. *United States v. Stevens*, 559 U.S. 460, 471, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quot-

ing *Giboney v. Empire Storage*, 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949)).

48. *United States v. Williams*, 553 U.S. 285, 297, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

49. *Id.* at 298, 128 S.Ct. 1830.

50. *Id.* at 300, 128 S.Ct. 1830.

51. *See* TEX. PENAL CODE § 22.011(a)(2) (West 2014).

52. *See id.* §§ 21.01 (defining "deviate sexual intercourse," "sexual contact," "sexual intercourse," and "spouse"); 22.011(a)(2) (offense against a child under age 17 with elements meeting the definitions of sexual contact, deviate sexual intercourse, or sexual intercourse), (e) (affirmative defenses of spouse and age). *See also id.* § 33.021(a)(2) (defining "sexual contact," "sexual intercourse," and "deviate sexual intercourse" . as having the meanings assigned by § 21.01).

line solicitation statute made it an offense if a person "knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage" in these sorts of sexual activities with the actor or another person.[53] The pre-2015 online solicitation statute included defenses for when the actor is a spouse or not more than three years older than the minor.[54] By prohibiting the conduct of soliciting a minor to meet with the intent that the minor engage in illegal sexual activity, former subsection (c) created an inchoate offense for the object offense of sexual assault of a child.

We recognized as much, albeit in *dicta*, in *Ex parte Lo*: "Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because offers to engage in illegal transactions such as sexual assault of a minor are categorically excluded from First Amendment protection."[55] As we suggested in *Lo*, other courts have held that the First Amendment does not apply to speech that attempts to induce a child to engage in illegal sexual activity: A person "simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts."[56] "The inducement of minors to engage in illegal sexu-

al activity enjoys no First Amendment protection."[57] "[S]peech used to further the sexual exploitation of children does not enjoy constitutional protection."[58] "Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."[59] "The common thread in cases involving First Amendment challenges to luring statutes is that freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute."[60]

 However, instead of defining a "minor" as someone under age 17, the legislature defined the term to mean either someone who represents himself or herself to be under age 17 or someone whom the actor believes to be under age 17. That means a person could commit a crime by soliciting someone who is actually an adult, as long as the person solicited had represented himself or herself to be under age 17 or the actor believed that the person being solicited was under age 17. We conclude, however, that solicitation still qualifies as an "integral part of conduct in violation of a valid criminal statute" if the actor is mentally culpable with respect to

**53.** *Id.* § 33.021(c).

**54.** *Id.* § 33.021(e).

**55.** 424 S.W.3d 10, 16 (Tex. Crim. App. 2013) (internal quotation marks and brackets omitted).

**56.** *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000). *See also United States v. Tykarsky*, 446 F.3d 458 (3d Cir. 2006) (citing *Bailey*); *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005) (quoting *Bailey*).

**57.** *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004). *See also State v. Alangcas*, 134 Haw. 515, 528, 345 P.3d 181, 194 (2015) (quoting *Meek*); *State v. Colosimo*, 122 Nev. 950, 955-56, 142 P.3d 352, 356 (2006) (same).

**58.** *People v. Foley*, 94 N.Y.2d 668, 683, 709 N.Y.S.2d 467, 731 N.E.2d 123, 132 (Ct. App. 2000). *See also State v. Green*, 397 S.C. 268, 277, 724 S.E.2d 664, 668 (2012) ("[S]peech used to further the sexual exploitation of children has been routinely denied constitutional protection as the State has a compelling interest in preventing the sexual abuse of children.").

**59.** *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).

**60.** *State v. Backlund*, 672 N.W.2d 431, 441 (N.D. 2003).

the solicited person's age, even if the solicited person turns out to be an adult.[61]

The Supreme Court has made clear that "[o]ffers to . . . engage in illegal activity do not acquire First Amendment protection when the offeror is mistaken about the factual predicate of his offer." [62] One characteristic of inchoate crimes that carries over into First Amendment jurisprudence is that the "impossibility of completing the crime because the facts were not as the defendant believed is not a defense." [63] Other courts have specifically held that the First Amendment does not protect a defendant who solicits someone he believes is a child who turns out to be an adult.[64] Distinguishing between "the defendant who attempts to induce an individual who turns out to be a minor from the defendant who, through dumb luck, mistakes an adult for a minor" would "bestow a windfall to one defendant when both are equally culpable." [65]

This discussion demonstrates the constitutionality of a provision that punishes the solicitation of a "minor" who meets part (B) of the statutory definition—an individual whom the actor believes to be younger than 17 years of age. The remaining question is whether this discussion demonstrates the facial constitutionality of punishing the solicitation of someone who meets part (A) of the statutory definition—an individual who represents himself or herself to be younger than 17 years of age. We believe that it does.

As we have construed the word "represents," a person who receives a representation that someone is under age 17, and does not otherwise know the representing individual's age, will be aware of a substantial risk that the individual is in fact under age 17, and a reasonable person would not disregard such a risk. Disregarding such a risk by soliciting the individual would satisfy the definition of recklessness as to the person's age.[66] The Supreme Court has indicated that recklessness can remove a statement from First Amendment protection: A reckless culpable mental state with respect to false statements about a public official removes First Amendment protection against libel litigation.[67]

 Turning specifically to appellant's complaint that the definition of "minor" allows the online solicitation statute to encompass roleplay about age between adults, we disagree. Such roleplay, as appellant has described it, involves two or more adults mutually pretending that one or more of them is a child. Obviously, a defendant who believes that the complainant is a child (under age 17) is not engaged in a mutual game of pretend. A mutual

---

**61.** By "mentally culpable," we mean that an actor believes that the solicited person is under age 17, or is reckless about whether the solicited person is under age 17.

**62.** *Williams*, 553 U.S. at 300, 128 S.Ct. 1830.

**63.** *Id.*

**64.** *United States v. Johnson*, 376 F.3d 689, 695 (7th Cir. 2004); *Meek*, 366 F.3d at 718, 721-22; *Backlund*, 672 N.W.2d at 442.

**65.** *Meek*, 366 F.3d at 718.

**66.** *See* Tex. Penal Code § 6.03(c) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct . . .

when he is aware of but disregards a substantial and unjustifiable risk that the circumstances exist.").

**67.** *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ("The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.").

game of pretend also does not occur when the complainant represents himself or herself to be a child, because, under our construction of the statute, the complainant would be asserting age as a matter of fact, to be accepted as true. The following scenarios, for example, would *not* qualify as a representation that the complainant is under age 17 because the complainant would *not* be asserting underage status as a matter of fact:

(a) The defendant and complainant are both adults. They both know that the other is an adult and are aware of each other's knowledge in that regard. The complainant makes statements that she is under age 17.

(b) The complainant says that she is an adult but will pretend to be a child. The complainant makes further statements consistent with pretending to be a child that do not, from the perspective of a reasonable person in the defendant's shoes, undermine the earlier claim to be an adult.

On the other hand, the following scenarios are examples of a complainant representing herself to be underage:

(c) The complainant is an undercover police officer who is actually 40 years old. She says that she is 16 years old. The defendant does not know the complainant's actual age.

(d) The complainant initially·says that she is an adult but later makes statements that she is under age 17 that, from the perspective of a reasonable person in the defendant's shoes, undermines the truthfulness of the earlier claim of adult status. The defendant's only knowledge regarding the complainant's age comes from these statements.

(e) The complainant is an undercover police officer who is actually 40 years old. She says that she is 16 years old. Unbeknownst to her, however, the defendant knows the complainant's actual age and knows that she is unaware of his knowledge of her age.

These examples are illustrative and not necessarily exhaustive. Nevertheless, we observe that, of these examples, only example (e) involves a situation in which the defendant's solicitation of the complainant might constitute an offense under the statute *and* might be protected by the First Amendment. And it is illustrative of the only general situation covered by the statute that we can conceive might involve protected expression: when the defendant knows that the complainant is an adult lying about her age but the complainant is unaware that the defendant knows this. Such a situation strikes us as an unusual hypothetical; we are not, for example, aware of any widespread practice in which the target of a sting operation plays along with a sting operation knowing that the supposed underage child is actually an adult police officer. When a statute that is designed to protect children against predatory practices proscribes mostly speech that is not protected by the First Amendment but incidentally encompasses unusual situations that are protected by the First Amendment, the correct approach is to uphold the statute against an overbreadth challenge and deal with the unusual situations on an "as applied" basis when they arise.[68] We reject appellant's contention that the definition of "minor" renders the online solicitation statute unconstitutionally overbroad.

---

**68.** *Williams,* 553 U.S. at 302-03, 128 S.Ct. 1830 (possibility that statute proscribing dissemination of child pornography would cover documentary footage of atrocities committed against children that would be worthy of First Amendment protection does not render statute unconstitutionally overbroad).

## D. Dormant Commerce Clause

 The Commerce Clause grants Congress the power to regulate commerce among the states.[69] The Supreme Court has held that this positive grant of power contains a "negative command, known as the dormant Commerce Clause," which prohibits certain state regulation with respect to interstate commerce.[70] Because the constitutional provision at issue is the Commerce Clause, rather than the First Amendment, a facial constitutional violation can be established only if the challenged statute is unconstitutional in all of its applications.[71] To the extent that this facial challenge is independent of appellant's challenge to the anti-defensive issues, it is cognizable.[72]

 The "dormant Commerce Clause jurisprudence significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce. It is driven by a concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[73] "The common thread among those cases in which the Court has found a dormant Commerce Clause violation is that the State interfered with the natural functioning of the interstate market either through prohibition or through burdensome regulation."[74] In determining whether there is an undue burden on interstate commerce, courts must keep in mind that the United States Constitution "never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country."[75]

Appellant relies upon *American Library Association v. Pataki*[76] for the proposition that § 33.021(c) impermissibly burdens interstate commerce in violation of the United States Supreme Court's "dormant Commerce Clause" jurisprudence. Appellant claims that "it is impossible to restrict the effects of Section 33.021 to conduct occurring within Texas" and that the statute overreaches by seeking "to regulate communications occurring wholly outside Texas."

The statute at issue in *Pataki* made it an offense for an individual:

Knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, to intentionally use any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or

69. U.S. Const. art. I, § 8, cl. 3 ("Congress shall have the Power ... To regulate Commerce ... among the several States."); *Comptroller v. Wynne,* —— U.S. ——, 135 S.Ct. 1787, 1794, 191 L.Ed.2d 813 (2015).

70. *Wynne, supra* (quoting *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 179, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995)).

71. *State v. Johnson,* 475 S.W.3d 860, 864 (Tex. Crim. App. 2015) (citing *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449 & n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)).

72. *See supra* at n.10 and accompanying text.

73. *McBurney v. Young,* 569 U.S. 221, 133 S.Ct. 1709, 1719, 185 L.Ed.2d 758 (2013) (citation and internal quotation marks omitted).

74. *Id.* (internal quotation marks omitted).

75. *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 443-44, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960).

76. 969 F.Supp. 160 (S.D.N.Y 1997).

engage in such communication with a person who is a minor.[77]

The *Pataki* court faulted this statute in part because "[a]n Internet user may not intend that a message be accessible to New Yorkers, but lack the ability to prevent New Yorkers from visiting a particular Website or viewing a particular newsgroup posting or receiving a particular mail exploder."[78] The *Pataki* court concluded that the statute violated the Commerce Clause because (1) the statute unconstitutionally regulated conduct occurring wholly outside New York, (2) although protecting children from indecent material was a legitimate and indisputably worthy subject of state legislation, the burdens on interstate commerce exceeded any local benefit, and (3) the Internet must be "marked off as a national preserve" to protect users from inconsistent legislation.[79]

*Pataki* is not binding precedent—it is the decision of a federal trial court—and it has received a significant amount of criticism for misunderstanding the nature of the internet and misconstruing dormant Commerce Clause jurisprudence.[80] Although *Pataki* has been followed in some cases,[81] many courts have distinguished *Pataki*, or cases following it, either because the statute at issue in *Pataki*, or the cases following it, broadly encompassed all internet activity—potentially punishing individuals simply for having a website that could be accessed by anyone without the website owner's consent[82]—or because *Pataki*, or the cases following it, did not involve a child-luring statute.[83] Several courts have pointed out that *Pataki* itself observed that the constitutionality of a New York child-luring statute was not at issue before it.[84]

■ We conclude that the three concerns expressed in *Pataki* are either unwarranted or inapplicable to the present case. We first turn to the contention, based on *Pataki*, that the statute in the present

---

77. 969 F.Supp. at 163 (quoting N.Y. Penal Law § 235.21(3) (brackets omitted)).

78. *Id.* at 177.

79. *Id.* at 169.

80. *See Rousso v. State*, 149 Wash. App. 344, 363-64, 204 P.3d 243, 252 (2009) (*Pataki's* "approach has been persuasively and widely criticized as resting on an impoverished understanding of the architecture of the Internet, misreading dormant Commerce Clause jurisprudence, and misunderstanding the economics of state regulation of transborder transactions. More importantly, numerous other cases (many addressing practically identical subjects) have either rejected outright [*Pataki's*] fundamental premise or distinguished [*Pataki*] as overbroad.") (citations, brackets, and internal quotation marks omitted); *National Federation of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 961-62 (N.D. Cal. 2006) ("[I]t is noteworthy that various commentators have observed that . . . *Pataki* . . .

rests on an incorrect technical understanding of the internet.").

81. *See e.g.*, *ACLU v. Johnson*, 194 F.3d 1149, 1161 (10th Cir. 1999).

82. *Ferguson v. Friendfinders, Inc.*, 94 Cal. App.4th 1255, 1264-65, 115 Cal.Rptr.2d 258, 265 (1st Dist. 2002).

83. *Simmons v. State*, 944 So.2d 317, 333 (Fla. 2006) (noting that *Foley* had distinguished *Pataki*); *Foley*, 94 N.Y.2d at 683-84, 709 N.Y.S.2d 467, 731 N.E.2d at 132-33 (distinguishing *Pataki*); *Backlund*, 672 N.W.2d at 437 (same); *People v. Hsu*, 82 Cal.App.4th 976, 985, 99 Cal.Rptr.2d 184, 191 (1st Dist. 2000) (same); *People v. Boles*, 280 P.3d 55, 62 (Colo. App. 2011) (distinguishing *ACLU v. Johnson*).

84. *Foley*, 94 N.Y.2d at 683-84, 709 N.Y.S.2d 467, 731 N.E.2d at 132; *Backlund*, 672 N.W.2d at 437; *Hsu*, 82 Cal.App.4th at 985, 99 Cal.Rptr.2d at 191; *People v. Helms*, 396 P.3d 1133, 1141, 2016 COA 90, ¶21 (Colo. App. June 16, 2016).

case regulates activity occurring wholly outside Texas. Appellant does not explain how he arrives at this conclusion, and we are unpersuaded. We must construe § 33.021 with other applicable statutes in the Penal Code, and one such statute is § 1.04, which provides when the State of Texas has territorial jurisdiction over an offense.[85] Among other things, § 1.04 states that territorial jurisdiction exists if "the conduct ... that is an element of the offense occurs inside this state." [86] More generally, § 1.04 seeks to provide jurisdiction where Texas has at least some substantial connection to the offense.[87] Appellant does not refer to § 1.04 at all, much less describe how the statute would fail, when construed with § 33.021, to properly confine prosecution to those offenses that have a substantial connection to this state. Other courts have held that, when construed with jurisdictional statutes, a statute proscribing internet communications that were designed to lure minors into

sexual activity did not extend to conduct taking place wholly outside the state's borders.[88] And some courts have explained that improper extraterritorial regulation does not occur when the statute is aimed at personally directed communications, as opposed to the passive conduct of having a website that users access.[89]

With respect to *Pataki*'s second and third concerns, that of impermissibly burdening interstate commerce and the need to protect the internet, we agree with numerous states that the kind of statute before us does not create an impermissible burden. Many courts have explained that there is no legitimate interstate economic interest in luring minors into sexual activity.[90] Several of these courts have emphasized that the intent element of the statute at issue (intending to seduce a minor into sexual activity, etc.) played a key role in removing the statute from Commerce Clause protection.[91] Courts have concluded that any effect of this type of statute on

---

85. TEX. PENAL CODE § 1.04 (West 2014).

86. *Id.* § 1.04(a)(1). *See also Rodriguez v. State*, 146 S.W.3d 674 (Tex. Crim. App. 2004) (where kidnapping was underlying offense of capital murder and kidnapping occurred in Texas, even though death of the victim did not, Texas had territorial jurisdiction over the offense).

87. *See* § 1.04, generally. *See also Walden v. Fiore*, — U.S. —, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

88. *Simmons*, 944 So.2d at 334-35; *Hsu*, 82 Cal.App.4th at 985, 99 Cal.Rptr.2d at 191-92.

89. *American Booksellers Foundation for Free Expression v. Strickland*, 601 F.3d 622, 623 (6th Cir. 2010) ("As the scope of the statute is limited to personally directed electronic communications, as currently available or devel-

oped in the future, we find that the statute does not violate the First Amendment or the Commerce Clause."); *Ferguson*, 94 Cal. App.4th at 1264-65, 115 Cal.Rptr.2d at 265 ("The statute at issue in *Pataki* applied to *all Internet activity* and the court's comments about the absence of geographic sensitivity were made in that context."); *Helms*, 396 P.3d at 1142, 2016 COA at ¶24 (The Colorado statute "contains an active element which obviates any concern about regulation of legitimate interstate commerce.").

90. *Simmons*, 944 So.2d at 334; *State v. Alangcas*, 134 Haw. 515, 536-37, 345 P.3d 181, 202-03 (2015); *Colosimo*, 122 Nev. at 956-57, 142 P.3d at 357; *Foley*, 94 N.Y.2d at 684, 709 N.Y.S.2d 467, 731 N.E.2d at 133; *Backlund*, 672 N.W.2d at 438; *Hatch v. Superior Court*, 80 Cal.App.4th 170, 195-96, 94 Cal.Rptr.2d 453, 471-72 (4th Dist. 2000); *Boles*, 280 P.3d at 62-63.

91. *Simmons, supra*; *Colosimo*, 122 Nev. at 957, 142 P.3d at 357; *Hatch*, 80 Cal.App.4th at 195, 94 Cal.Rptr.2d 453, 471-72.

legitimate interstate commerce is incidental at best.[92] Conversely, states have a compelling interest in protecting children from sexual exploitation.[93]

Like statutes in other jurisdictions, the Texas statute is designed to protect children from sexual exploitation. To that end, the statute proscribes only those communications that are intended to cause certain types of individuals to engage in sexual activity. Those types of individuals are those whom the actor believes to be under age 17 and those who represent themselves be under age 17, when the actor is more than three years older than the believed or represented age. As we have explained earlier in this opinion, when a person represents himself or herself to be under age 17, the actor who solicits such a person will ordinarily be aware of a substantial risk that the person is underage. We conclude that any effect the Texas statute has on legitimate interstate commerce is incidental, at best, and far outweighed by the compelling state interest the statute serves. We conclude that the statute is not facially unconstitutional.

Concluding that claims based on the anti-defensive issues are not cognizable and that the overbreadth and Commerce Clause claims are otherwise without merit,[94] we affirm the judgments of the courts below.

Yeary, J., joined the opinion of the Court as to parts II.A. and II.B. and otherwise concurred.

Alcala, J., filed a concurring opinion joined by Newell, J. Keasler, J., concurred.

**92.** *Simmons, supra; Backlund,* 672 N.W.2d at 438 (quoting *Hsu); Hsu,* 82 Cal.App.4th at 984, 99 Cal.Rptr.2d at 190; *Helms,* 396 P.3d at 1142, 2016 COA at ¶25. *See also Alangcas,* 134 Haw. at 537, 345 P.3d at 203 ("Alangcas has not demonstrated that there would be any effect—incidental or otherwise—upon interstate commerce"); *Colosimo, supra* ("Criminalizing such transmissions can hardly be considered a burden on interstate commerce."); *Foley,* 94 N.Y.2d at 684, 709 N.Y.S.2d 467, 731 N.E.2d at 133 ("Indeed, the conduct sought to be sanctioned by Penal Law § 235.22 is of the sort that deserves no 'economic' protection.").

**93.** *Lo,* 424 S.W.3d at 19; *Simmons, supra; Alangcas, supra* (quoting *Cashatt v. State,* 873 So.2d 430, 436 (Fla. Dist. Ct. App. 2004)); *Colosimo, supra* (quoting *Backlund); Foley,* 94 N.Y.2d at 682-83, 709 N.Y.S.2d 467, 731 N.E.2d at 132; *Backlund,* 672 N.W.2d at 437 (quoting *Hsu); Green,* 397 S.C. at 277, 724 S.E.2d at 668; *Hsu, supra; Helms,* 396 P.3d at 1142, 2016 COA at ¶25.

**94.** In his brief, appellant also argues that the 2015 revisions to § 33.021 should be applied retroactively. In 2015, the legislature deleted subsections (d)(2) and (d)(3) and deleted the "represents" language from the subdivision (A) definition of "minor" so that it reads "an individual who is younger than 17 years of age." *See* TEX. PENAL CODE § 33.021 (West 2016). Appellant does not, however, claim that the legislature authorized these changes to apply retroactively. *See* Acts 2015, 84th Leg., ch. 61 (S.B. 344), § 3 ("The change in the law made by this Act applies only to an offense committed on or after the effective date of this Act."). Appellant acknowledges that the amendment "does not grant the Petitioner relief" but argues that "this act by the Legislature persuasively urges that the previous version of 33.021 should be squared with the Constitution and this Court should consider the same when considering these issues." But, "[i]t is axiomatic that one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight." *Chase v. State,* 448 S.W.3d 6, 27 (Tex. Crim. App. 2014). Moreover, even if consideration of these legislative changes would otherwise be warranted, our determination that appellant's attacks on subsections (d)(2) and (d)(3) are not cognizable and our decision to narrowly construe the "represents" portion of the definition of "minor" has obviated any need to do so in the present case.

Alcala, J., filed a concurring opinion in which Newell, J., joined.

I concur in this Court's judgment that upholds the judgment of the court of appeals. I, however, do not join this Court's majority opinion for two reasons. First, I do not agree with the portion of the majority opinion's analysis as to the non-cognizability of some of the claims in the pretrial habeas application filed by Adam Wayne Ingram, appellant. Unlike this Court's majority opinion that determines that a portion of appellant's claims are non-cognizable "anti-defensive issues," I would decide all of his claims on the merits. Second, as to the merits of those claims, I would sustain appellant's complaint that the online solicitation of a minor statute, as a whole, is unconstitutionally vague, but I would delete the portions of the offending subsection that render the statute unconstitutional, and, as narrowly constructed, I would uphold the constitutionality of the statute. I, therefore, concur only in this Court's judgment.

## I. Facial Challenge is Cognizable in Pretrial Habeas Application

I conclude that appellant's facial challenge is cognizable in a pretrial habeas application. Appellant's indictment is premised on the online solicitation of a minor statute, which, at the time of his conduct, described the offense in subsection (c) by stating, "A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." TEX. PENAL CODE § 33.021(c) (West 2010). The statute defined "minor" as "(A) an individual who represents himself or herself to be younger than 17 years of age; or (B) an individual whom the actor believes to be younger than 17 years of age." *Id.* § 33.021(a)(1)(A), (B). Subsection (d) in the statute stated, "It is not a defense to prosecution under Subsection (c) that: ... (2) the actor did not intend for the meeting to occur; or (3) the actor was engaged in a fantasy at the time of commission of the offense." *Id.* § 33.021(d).[1]

This Court holds that subsection (d) is an "anti-defensive issue" that is dependent on the evidence introduced at trial and thus is not subject to a facial challenge or eligible for pretrial habeas review. To my knowledge, this Court has never used the term "anti-defensive issue" before today. I do not believe that the term "anti-defensive issue" is an appropriate description of subsection (d). It is true that subsection (d) is not a defense because it does not begin with the phrase, "It is a defense to prosecution...."[2] Rather, I conclude that subsection (d) is more appropriately understood as either establishing the elements of the offense or providing for a definition of the elements of the offense. In any event, because the provisions in subsection (d) serve to clarify the scope of the statute and arguably broaden the statute's coverage to reach conduct that might not otherwise plainly be encompassed within its

---

**1.** Subsection (d)(1) additionally provides that it is not a defense to prosecution under subsection (c) that the meeting did not actually occur. TEX. PENAL CODE § 33.021(d)(1) (West 2010). Appellant does not challenge the constitutionality of that portion of subsection (d), and thus it is not implicated in this appeal.

**2.** Section 2.03 of the Texas Penal Code states, "(a) A defense to prosecution for an offense in this code is so labeled by the phrase: 'It is a defense to prosecution....'" TEX. PENAL CODE § 2.03.

reach, I would hold that appellant's facial challenge to this subsection is properly considered in a pretrial habeas application.

Subsection (d)'s phrasing that certain facts are "not a defense to prosecution" means that there will be criminal liability for certain types of conduct regardless of whether the "actor did not intend for the meeting to occur" and regardless of whether the "actor was engaged in a fantasy at the time of the commission of the offense." *Id.* This phrasing is not factually dependent on the evidence that is introduced at trial. Rather, in all cases in which the statute is used to accuse someone of online solicitation of a minor, that person may be convicted under the statute regardless of whether he actually intended for the meeting to occur or was engaged in fantasy at the time of the activity. Given this, I do not view subsection (d) as a mere anti-defensive issue that comes into play only when certain evidence is introduced at trial, as this Court suggests. I conclude that this subsection operates more like a definition for the word "solicits" that appears in subsection (c), or like an element of the offense in that it serves to clarify the intent element in subsection (c) by specifying that an actor can still intend that a minor will engage in sexual activity even if he does not intend for the meeting to actually occur or was engaged in fantasy. For this reason, unlike this Court's majority opinion, I would hold that appellant's challenge to subsection (d) is cognizable in a pretrial habeas application under the rationale that it is a facial challenge to the statute or, at the very least, more like a facial challenge than it is like an as-applied challenge. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) ("Pretrial habeas can be used to bring a facial challenge to the constitutionality of the statute that defines the offense[.]").

## II. The Deletion of the Offending Subsections Makes Statute Constitutional

Given that appellant's complaint is cognizable for pretrial habeas review, I would address his complaint on its merits. I agree with him that the inclusion of the offending subsections renders the statute unconstitutionally vague because the statute criminalizes the intent to solicit the child for sexual activity but then, in contradiction, it permits a conviction when there is no actual intent to meet a child. The inclusion of the offending subsections renders the statute internally inconsistent. Nonetheless, I would uphold the statute by applying a narrowing construction that deletes the offending subsections.

The court of appeals held that, under its precedent in *Ex parte Zavala*, the complained of subsections are not contradictory with the elements of the offense in subsection (c), and thus it determined that the statute was not unconstitutionally vague. *Ex parte Zavala*, 421 S.W.3d 227, 231-32 (Tex. App.—San Antonio 2013, pet. ref'd). The court of appeals explained that, in *Zavala*, it had held that the crime of solicitation was completed at the time of the request or solicitation so that it was immaterial whether the meeting had actually occurred or whether the solicitor intended that the meeting would not occur. *See id.* I disagree with this assessment of the statute.

"[A] statute is void for vagueness if its prohibitions are not clearly defined." *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). A penal statute must define the criminal offense with adequate definiteness so that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement. *Id.* Taking subsection (c) in isolation from subsection (d), the statute clearly prohibits the

knowing solicitation of "a minor to meet another person, including the actor," with the intent that the minor will engage in sexual activity. TEX. PENAL CODE § 33.021(c) (West 2010). That provision becomes vague, however, with the inclusion of subsection (d)(2), which provides for criminal liability even when "the actor did not intend for the meeting to occur." *Id.* § 33.021(d)(2). I conclude that the inclusion of subsection (d)(2) appears to create an internally inconsistent intent element because an actor cannot, at the same time, knowingly solicit a minor to meet with the intent of causing the minor to engage in sexual activity while concurrently not having any actual intent for the meeting to occur. *Id.* Similarly, I conclude that the provision in subsection (d)(3) renders the statute internally inconsistent because an actor cannot, at the same time, knowingly solicit a minor with the intent to meet for sexual activity while concurrently not having any actual intent to meet because he was engaged in a fantasy at the time of the solicitation. *Id.* § 33.021(d)(3). I would hold that, when subsections (d)(2) and (d)(3) are considered along with subsection (c), ordinary people would not understand what is prohibited given the internal contradictions in the statute as a whole, and that this would likely permit arbitrary and discriminatory enforcement of this offense. *See Holcombe*, 187 S.W.3d at 499.

This Court's majority opinion accurately notes that courts may employ a reasonable narrowing construction that permits a statute to be upheld over a constitutional challenge, and I agree with that concept as it would apply here. Here, because the offending subsections are in an entirely separate section from the description of the elements of the offense of online solicitation of a minor, I conclude that the Legislature intended to criminalize a defendant's knowing intent to meet a child, and thus it is proper to apply a narrowing construction that deletes subsections (d)(2) and (d)(3). With that reformation, I would uphold the constitutionality of the statute so that subsection (c) alone describes the offense of online solicitation of a minor under the intent-to-meet provision.

## III. Conclusion

I would treat the statutory requirements in subsection (d) as constituting an element or definition of the offense and would consider the merits of appellant's challenge to that subsection as a facial challenge that is cognizable on pretrial habeas. I, however, would also hold that subsection (d) may be severed from the statute in such a way as to make subsection (c) conform with the requirements of the federal Constitution. For these reasons, I concur in this Court's judgment affirming the judgment of the court of appeals.