

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00623-CR

**EX PARTE** Luis Alfredo **APARICIO**

From the County Court, Maverick County, Texas
Trial Court No. 3976
Honorable Mark R. Luitjen, Judge Presiding[1]

Opinion by:     Liza A. Rodriguez, Justice

Sitting en banc:   Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: June 21, 2023

REVERSED AND REMANDED

As part of Operation Lone Star, Luis Alfredo Aparicio, a noncitizen, was arrested for trespassing on private property in Maverick County.[2] He filed an application for writ of habeas corpus seeking dismissal of the criminal charge, arguing the State's selective prosecution of him violated the Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment. *See* U.S. CONST. amend. XIV; TEX. CONST. art. 1, § 3(a). After holding an evidentiary hearing on the merits, the trial court denied his requested relief. Aparicio appeals, arguing the trial

---

[1]The Honorable Paul Canales presided over the hearing on Luis Alfredo Aparicio's application for writ of habeas corpus. The Honorable Mark R. Luitjen signed the order denying relief on Aparicio's application.
[2]Aparicio is going through the asylum process and asserts he is lawfully present in the United States.

court erred in denying his relief because the State's practice of prosecuting men, and not women, for criminal trespass as part of Operation Lone Star violated his federal and state constitutional rights to equal protection. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

On March 6, 2021, Governor Greg Abbott directed the Texas Department of Public Safety ("DPS") to initiate Operation Lone Star ("OLS") and "devote additional law enforcement resources toward deterring illegal border crossings and protecting [] border communities." He directed "DPS to use available resources to enforce all applicable federal and state laws to prevent the criminal activity along the border, including criminal trespassing, smuggling, and human trafficking, and to assist Texas counties in their efforts to address those criminal activities." As part of OLS, Aparicio was arrested for criminal trespass. *See* TEX. PENAL CODE § 30.05(a). He then filed a pretrial application for writ of habeas corpus, arguing the State was selectively prosecuting him in violation of his equal protection rights.

At the habeas corpus hearing, Aparicio testified that on May 3, 2022, he was with a group of people when he was arrested in Maverick County for criminal trespass. According to Aparicio, there were six people in his group: two females and four males (one of whom was seventeen years old). The two females and the minor male were separated from his group. Aparicio and the remaining men were arrested and transported to a detention facility in Val Verde County.

Also at the hearing, several witnesses testified about OLS and its implementation. Claudia Molina of the Lubbock Private Defender's Office discussed the process through which an individual who is arrested for criminal trespass under OLS obtains appointment of counsel. According to Molina's testimony, the Lubbock Private Defender's Office ("LPDO"), in conjunction with OLS, was awarded a grant by the Texas Indigent Defense Commission to appoint

counsel to represent individuals who have been brought before a magistrate or are being held at detention facilities. That is, when an individual is arrested and brought before a magistrate, his paperwork is sent to an OLS inbox at LPDO, which then reviews the paperwork and assigns appointed counsel. Molina testified that all individuals arrested under OLS in Webb, Jim Hogg, Maverick, Kinney, and Val Verde counties receive appointed counsel through LPDO. According to Molina, "the primary misdemeanor arrest" in conjunction with OLS is criminal trespass, while "the primary felony arrest" is "smuggling of persons." As part of OLS, LPDO first began appointing counsel to defendants arrested in Maverick County on March 22, 2021.

In preparation for her testimony, Molina ran reports through LPDO's case management system, which she does as part of her regular duties. Molina testified that three days before the habeas hearing, she ran reports on LPDO's case management system and determined that as part of OLS, 470 people had been arrested in Maverick County for misdemeanor offenses. None of the 470 individuals arrested were female.

With regard to the five counties that are part of OLS (Webb, Kinney, Maverick, Jim Hogg, and Val Verde), Molina testified that 4,076 people had been arrested for misdemeanor offenses as part of OLS. Again, none of the 4,076 people arrested for misdemeanor offenses were female.

Molina further testified she ran a report to determine how many women were appointed counsel for misdemeanor offenses during the week of May 3, 2022 (i.e., the week Aparicio was arrested). Again, none of the individuals arrested were female. Molina was then asked:

Q:     So, to be clear, counties participating in Operation Lone Star, from the documentation you reviewed and from your personal experience, arrest and prosecute women for felonies in Operation Lone Star?

A:     Yes.

Q:    But counties participating in Operation Lone Star, including Maverick County, are choosing not to prosecute women for misdemeanors?

A:    Yes.

Molina testified that when a person is arrested under OLS, part of the paperwork forwarded to LPDO includes a probable cause statement, which LPDO reviews "in order to determine how to assign counsel." Molina testified that based on her review of those probable cause statements, it was not uncommon for both women and men to be found on the same private property; however, the women were not prosecuted for criminal trespass.

DPS Captain Joel Betancourt "oversee[s] a district which encompasses nine counties for DPS." Since the inception of OLS in March 2021, Captain Betancourt has been involved in meetings with prosecutors and local officials to plan how to implement and execute OLS. With regard to Maverick County, Captain Betancourt testified he met with Maverick County officials, including the sheriff, the county judge, and members of the prosecutor's office to discuss implementation of OLS. During his testimony, Captain Betancourt agreed with the following facts:

- One reason for OLS was an increase in "crossings from Mexico into Texas."

- One of OLS's purposes was "to deter this unauthorized migration."

- OLS "tries to deter individuals through prosecuting people for various crimes," including misdemeanor criminal trespass and the felony offense of human smuggling.

- Many counties at or near the border are involved with OLS, including Maverick, Kinney, Val Verde, Webb, and Jim Hogg counties.

- Governor Abbot has declared a state of disaster in each of those five counties.

- Thousands of individuals have been prosecuted for misdemeanor criminal trespass as part of OLS.

- DPS has a lead role in deciding what resources are employed for OLS.

Captain Betancourt further authenticated an August 12, 2021 email he sent to his "two lieutenants" and an assistant. The subject of the email was "Guidance on Arrests for Criminal Trespass." According to Captain Betancourt, the purpose of the email was "to provide guidance to people about who to arrest for purposes of" OLS and who should instead be sent to immigration authorities. The email, which was admitted in evidence without objection, states the following:

> We will continue to arrest those immigrants who are trespassing on *__private__* property (Only in Val Verde and Kinney County) where the landowner has either agreed to file a complaint or agreed to have us sign them on their behalf. The criteria has been expanded to include the *__majority__* of *__single adult males__*. While it would be difficult to cover every single scenario, below are some examples:
>
> Father, Mother, and Child under *__18__* – Family Unit. Release to BP.
>
> Father, Mother, and Child over 18 *__and__* are trespassing- Male father will be arrested. Mom and adult child will be released to BP.
>
> Uncle and *__adult__* nephew and are criminal trespassing- Arrest both.
>
> Uncle and child nephew- Family Unit, refer to BP.
>
> *__The basic common denominators are:__*
>
> If there is a child who is part of a family. We will refer to BP.
>
> If the family consists of male adults (18 and over) we will arrest, *__if they are trespassing__*.
>
> Please let me know if you have any questions.
>
> Joel A. Betancourt
> Captain
> South Texas Region – Del Rio

(emphasis in original).

Captain Betancourt explained that this email expanded a former policy to include "the rest of the majority of single adult males." He further agreed the policy as stated in the email did not include arresting any women for criminal trespass. With regard to the felony offense of human

trafficking, Captain Betancourt testified that both men and women are arrested and prosecuted for human trafficking.

On cross-examination, the State pointed out that Captain Betancourt's email was titled "guidance" and asked Captain Betancourt to explain what "guidance" meant to him. Captain Betancourt testified that guidance meant "a set of rules or set of expectations that should be adhered to or that need to be adhered to." Captain Betancourt then again confirmed that when women are found in a group of individuals who are trespassing, the women are not arrested, but released to the custody of border patrol, while the "men go to the processing center in Val Verde County." Captain Betancourt described the processing center in Val Verde as being a large tent with flooring and air conditioning. Like a county jail, there is a "booking process, a medical process, mental health screening," and "holding cells." Because there is no segregation at the facility, no women are held there.

On redirect examination, Captain Betancourt was again asked about his "guidance" and whether he expected state troopers working underneath him to follow his guidance. He replied that he did. Defense counsel then asked,

> Q: You expect your guidance here to be followed, correct? The troopers don't have [the] ability to ignore what you have said, correct?
>
> A: That is correct.

Captain Betancourt agreed that there are facilities all along the border that allow for the detention of women who commit crimes. Captain Betancourt further agreed that individuals detained as part of OLS are ultimately sent to two detention facilities, which had been modified by the State to be proper pretrial holding facilities. Neither facility had been designed to hold women.

DPS Trooper Sara Palos, the prosecutorial liaison for Maverick County, testified she is the intermediary between DPS and the county attorney's office. According to Trooper Palos, her direct supervisor is Sergeant Quiroga, which was "basically" "the same thing as working for Captain Betancourt." Trooper Palos testified that on August 12, 2021, she received Captain Betancourt's "guidance" email as part of a long email chain. She was asked if this guidance was followed in Maverick County and replied, "Yes." When asked why Maverick County would be following Captain Betancourt's guidance email when his email refers only to Kinney and Val Verde counties, Trooper Palos explained that when Captain Betancourt first sent his email on August 12, 2021, DPS was not working in Maverick County "as far as criminal trespassing."

Q:    And when Maverick County opened up, would you say that's the policy?

A:    This is the last directive that we received. That's what we're following.

According to Trooper Palos, "The directive is whenever we have a group, any female that's within that group, that female—I mean, if there [are] any females within that group, females are going to be a referral and turned over to the custody of U.S. Border Patrol." She further explained that DPS does "not transport or hold females in the detention center, in the Val Verde Detention Center." While DPS charges men with criminal trespass, women are not charged and instead referred to border patrol.

In addition to Captain Betancourt and Trooper Palos, several DPS troopers testified at the habeas hearing about misdemeanor arrests they had made pursuant to OLS. Their testimony about the process they followed was consistent. The troopers had, respectively, come across groups of both women and men in Maverick, Kinney, and Jim Hogg counties, whom they believed were trespassing on private property. While the troopers had arrested men under those circumstances for criminal trespass, not a single trooper who testified had ever arrested a woman for criminal trespass—even though the troopers admitted they believed the women had also been committing

the offense of trespass. They testified consistently that the men were taken to the holding facilities that had been constructed as part of OLS. The women were "released" to border patrol. None of the troopers memorialized any identifying information about the women in their reports.

When asked why he had not arrested any women for criminal trespass, DPS Trooper Brandon Aquino testified that he just "follow[s] orders and [his] orders were there is no space for females." "So [he is] not going to overstep all that." He testified that there was no policy that he knew about of not arresting women for criminal trespass, but that if the jail does not accept women, they are then taken to border patrol. Trooper Aquino was then asked the following:

Q:     But it's also your testimony you are not calling the Maverick County Jail to see if they will accept a woman who is committing an alleged crime on Maverick County property, is that correct?

A:     I did not call Maverick County.

Q:     So it is correct you do not call Maverick County to see if they will take the women?

A:     I didn't say that. I did not call Maverick County.

Q:     I am asking you: Do you call Maverick County when a woman is part of a group that is arrested for Operation Lone Star? Do you call their jail?

A:     I don't remember.

Q:     Have you ever called their jail?

A:     Yes.

Q:     For a group of women?

A:     Not for a group of women.

Similarly, DPS Trooper Valentin Cantu testified that when he came across a group of three men and one woman in Jim Hogg County, he arrested the men, but not the woman, because the holding facility in Val Verde County would not take women. Instead, Trooper Cantu released the woman to border patrol. He was then asked why he did not take the woman in question to the Jim

Hogg County jail. He replied that he would have had to call the Jim Hogg County jail in advance, which he did not do. Trooper Cantu was then asked:

Q:      Is it your understanding [that] there is a policy that if a woman were found to be smuggling, she should be arrested?
A:      Yes.

Q:      And is it your understanding that there is a policy to not, like you say, not put charges on the women [for criminal trespass], but give them to border patrol?

A:      That's the guidance we receive.

DPS Trooper Guadalupe Santos testified specifically about arresting Appellant Aparicio on May 3, 2022. He testified he discovered a group of six people, one of which was Aparicio, trespassing in Maverick County. The group consisted of three men, two women, and a juvenile male. Trooper Santos testified the three men, including Aparicio, were arrested for criminal trespass. Even though Trooper Santos testified he believed the two women were also trespassing, they were not arrested. Because Trooper Santos did not arrest the women, he did not put any identifying information about them in his report.

When asked why he had not arrested the women, Trooper Santos stated, "The jail does not accept females; therefore, charging them—I get the jail capacity cannot take females; therefore, charging them is not an option at that point." According to Trooper Santos, women who are believed to be committing felony smuggling are sometimes arrested—"It also depends with jail capacity status as well." Because Trooper Santos had given the explanation of jail capacity, he was asked whether he had called the jail regarding the two women found trespassing with Aparicio on May 3, 2022. Trooper Santos testified he had not called the jail. When asked whose decision it was not to charge the women, Trooper Santos replied, "Well, it's going to be the peace officer's decision."

Q:      Have you ever made a decision to charge a female for a criminal trespass under Operation Lone Star?

A:      I have not.

Q:      And you make that decision based on gender, correct?

A:      It's based on the fact that the jail will not allow me to arrest the females. If they did, they would be arrested every single time.

Q:      The Maverick County Jail would not allow you to arrest females?

A:      Well, they won't take them. They are not taking them into their custody; therefore, I can't do anything with them because they are not going to take them.

Q:      So you're saying, I'm okay in Maverick County, the jail is not going to take me, so I'm free and clear. Is that your testimony?

A:      Well, that's not my testimony. My testimony is that at the time, the jail would not take them; therefore, they were referred to border patrol—that way they can go through that process.

Trooper Santos was asked the last time he came across a woman trespassing. He replied Saturday.

He did not call the Maverick County jail. He did not arrest the woman.

At the end of the hearing, the trial court made the following findings on the record:

(1) "In these five counties, based upon testimony that was received, there had been no females arrested for criminal trespass."

(2) "The next finding is that women are not arrested by . . . DPS troopers."

(3) "There are all kinds of different law enforcement agencies around here and I don't know anything about those, just these DPS cases. Women are not released. They are sent to the, I guess, border patrol, from what I heard, and they are in custody at the time they are released by DPS troopers to border patrol."

(4) "The next finding is these—I think you called them central processing or detention centers—do not take women. That there are central processing centers apparently in Val Verde and perhaps in Jim Hogg County."

(5) "That the Defense Exhibit Number 13 indicates that there are exceptions in the DPS troopers—Captain Betancourt's guidance on arrest for criminal trespass. There are exceptions for elderly 60-plus males, or injured males, for example, uncle and child, nephew family unit referred to border patrol. Father, mother, and child under 18. Family unit released to border patrol. But not just defendants like this defendant that are favored, if you will, by this policy. Women in particular are favored."

The trial court then denied Aparicio's requested relief. In explaining its ruling, the trial court relied on the State's argument that charges could still be brought against the women who had been found trespassing:

> But the statute of limitations argument makes [Aparicio's equal protection argument] fail. I mean, it really does. I don't think there is a chance in you know where that he's ever going to prosecute one of these women, but he could if he chose to. And until then, you know, the argument of sex discrimination fails.

Aparicio appealed.

## STANDARD OF REVIEW

In reviewing a trial court's decision to grant or deny habeas corpus relief, we defer to the trial court's assessment of the facts when those facts turn on an evaluation of credibility and demeanor. *See Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Perusquia*, 336 S.W.3d 270, 274 (Tex. App.—San Antonio 2010, pet. ref'd); *Ex parte Quintana*, 346 S.W.3d 681, 684 (Tex. App.—El Paso 2009, pet. ref'd). Thus, we view the facts in the light most favorable to the court's ruling and will uphold it absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d at 324; *Ex parte Perusquia*, 336 S.W.3d at 274-75; *Ex parte Quintana*, 346 S.W.3d at 684. "We afford almost total deference to the trial court's determination of historical facts that are supported by the record, and to mixed questions of law and fact, when the resolution of those questions turn[s] on evaluations of credibility and demeanor." *Ex parte Perusquia*, 336 S.W.3d at 275. "If the resolution of the ultimate question turns on an application of the law, we review the determination de novo." *Id*.

## SELECTIVE-PROSECUTION CLAIM ON THE BASIS OF EQUAL PROTECTION

In his pretrial writ application, Aparicio argued the State's selective prosecution of him based on his gender violated his rights under the Equal Protection Clause of the United States Constitution and the Equal Rights Amendment to the Texas Constitution. *See* U.S. CONST. amend.

V, XIV; TEX. CONST. art. I, § 3a. The principle of equal protection guarantees that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Walker v. State*, 222 S.W.3d 707, 710 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (quoting *City of Cleburne*, 473 U.S. at 439). The same standards for equal protection challenges under the United States Constitution are applied to the Texas Constitution. *Walker*, 222 S.W.3d at 711.

"Prosecutors retain broad discretion in enforcing both the nation's and a state's criminal laws." *Roise v. State*, 7 S.W.3d 225, 243 (Tex. App.—Austin 1999, pet. ref'd) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "If the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion." *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (citation omitted). Because of this discretion, there is a presumption that a prosecutor has acted within his or her duties and in good faith. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Nonetheless, prosecutorial discretion is not absolute and is subject to constitutional constraints, including equal protection principles. *See id.*; *Roise*, 7 S.W.3d at 243. "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 517 U.S. at 464-65 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)). Accordingly, a prosecutor's decision to prosecute "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)); *Roise*, 7 S.W.3d at 243 (quoting *Oyler*, 368 U.S. at 456). "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608).

"Because we presume that a prosecution for the violation of a criminal law is undertaken in good faith and in a nondiscriminatory fashion, the burden falls on the defendant to establish a prima facie case of selective prosecution." *Robles v. State*, 585 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). The defendant must demonstrate that the prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608). To establish a discriminatory effect in a case based on gender discrimination, the defendant must show similarly situated individuals of the opposite sex were not prosecuted for the same conduct. *See Armstrong*, 517 U.S. at 465 (stating standard with respect to race discrimination); *Robles*, 585 S.W.3d at 597 (applying *Armstrong* standard to gender discrimination). To demonstrate that the prosecution was motivated by a discriminatory purpose, the defendant must show that the government's selection of the defendant for prosecution was based on an impermissible consideration, such as race, religion, or other desire to prevent the exercise of constitutional rights. *Wayte*, 470 U.S. at 610. Selecting a defendant for prosecution on the basis of sex is an impermissible consideration. *See Robles*, 585 S.W.3d at 597; *Lovill v. State*, 287 S.W.3d 65, 79 (Tex. App.—Corpus Christi-Edinburg 2008), *rev'd on other grounds*, 319 S.W.3d 687 (Tex. Crim. App. 2009); *see also State v. McCollum*, 464 N.W.2d 44, 52 (Wis. Ct. App. 1990) (affirming dismissal of prostitution charges on equal protection grounds where female defendants alleged selective enforcement on the basis of gender).

Once the defendant establishes a prima facie case of selective prosecution in violation of equal protections rights, the burden shifts to the State to justify the discriminatory treatment. *Ex parte Quintana*, 346 S.W.3d 681, 685 (Tex. App.—El Paso 2009, pet. ref'd); *Lovill*, 287 S.W.3d at 79. Because a federal constitutional equal protection claim on the basis of gender discrimination is subject to intermediate scrutiny, the State must demonstrate that the discriminatory classification is substantially related to an important governmental interest. *See Clark v. Jeter*, 486 U.S. 456,

461 (1988); *Casarez v. State*, 913 S.W.2d 468, 493 (Tex. Crim. App. 1995) (op. on reh'g). With regard to an equal protection claim on the basis of gender under the Texas Constitution, the State's discriminatory conduct is subject to strict scrutiny. *See Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 257 (Tex. 2002).

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. Because it has no bearing on the determination of actual guilt, "it is an issue for the court to decide, not an issue for the jury." *Galvan v. State*, 988 S.W.2d 291, 295 (Tex. App.—Texarkana 1999, pet. ref'd). With these legal principles in mind, we turn to the threshold issue of whether Aparicio's selective-prosecution claim is cognizable in a pretrial habeas proceeding.[3] *See Ex parte Dominguez Ortiz*, No. 04-22-00260-CR, 2023 WL 1424651, at *1 (Tex. App.—San Antonio Feb. 1, 2023, no pet.) (en banc).

*A.   Is Aparicio's Pretrial Habeas Claim of Selective Prosecution Cognizable?*

"Neither a trial court nor an appellate court should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal." *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001). "Additionally, an applicant must be illegally restrained to be entitled to relief." *Id*. Here, Aparicio was restrained of his liberty within the meaning of article 11.01 of the Texas Code of Criminal Procedure when he was charged with criminal trespass and released on bond. *See id*.; *Ex parte Zavala*, 421 S.W.3d 227, 230 (Tex. App.—San Antonio 2013, pet. ref'd).

---

[3]We have found no case on point where the Texas Court of Criminal Appeals has addressed whether a pretrial habeas claim like the one brought by Aparicio is cognizable. We note that the El Paso Court of Appeals has addressed the merits of an interlocutory appeal from the denial of a pretrial writ of habeas corpus raising the issue of selective-prosecution claim under the Equal Protection Clause. *See Ex parte Quintana*, 346 S.W.3d 681, 685-86 (Tex. App.—El Paso 2009, pet. ref'd). The court, however, did not explain why it determined the claim was cognizable. *See id*.

Because Aparicio meets the restraint requirement, we next consider whether he is permitted to bring his claim through a pretrial writ application. *See Ex parte Weise*, 55 S.W.3d at 619.

"Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy" that is "reserved 'for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" *Ex parte Ingram*, 533 S.W.3d 887, 891-92 (Tex. Crim. App. 2017) (quoting *Ex parte Weise*, 55 S.W.3d at 620). "Denial of relief in pretrial habeas implicates the right to an interlocutory appeal, itself an extraordinary remedy." *Ex parte Edwards*, 663 S.W.3d 614, 616 (Tex. Crim. App. 2022). "Consequently, appellate courts take care to foreclose from pretrial habeas 'matters that in actual fact should not be put before appellate courts at the pretrial stage.'" *Id*. (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)).

"In determining whether an issue is cognizable on habeas, '[the court of criminal appeals] ha[s] considered a variety of factors." *Ex parte Weise*, 55 S.W.3d at 619. It has "looked at whether the alleged defect would bring into question the trial court's power to proceed." *Id*.; *see Ex parte Trillo*, 540 S.W.2d 728, 733 (Tex. Crim. App. 1976) (explaining pretrial habeas was appropriate "because it involve[d] a question of the very power of the lower court to proceed and to restrain the appellant's liberty while it does proceed"), *overruled on other grounds by Aguilar v. State*, 621 S.W.2d 781, 785 (Tex. Crim. App. 1981). "Along these same lines, [the court] ha[s] found that a pretrial application is not appropriate when resolution of the question presented, even if resolved in favor of the applicant, would not result in immediate release." *Ex parte Weise*, 55 S.W.3d at 619.

The court of criminal appeals has also considered whether the constitutional protection "would be effectively undermined" if the issue was not cognizable in a pretrial habeas proceeding. *Id*. In holding a claim involving double jeopardy is cognizable in a pretrial habeas proceeding, the

court of criminal appeals explained that "the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Ex parte Robinson*, 641 S.W.2d 552, 554 (Tex. Crim. App. 1982). The guarantee against double jeopardy "thus protects interests wholly unrelated to the propriety of any subsequent conviction" and "would be significantly undermined by postponement of review until after conviction." *Id.* (citing *United States v. Hollywood Motor Car Co.*, 458 U.S. 263 (1982)). Similarly, the court of criminal appeals has allowed pretrial writs to assert constitutional protections with respect to bail. *Ex parte Weise*, 55 S.W.3d at 619-20.

In contrast, the court of criminal appeals has disallowed the use of a pretrial writ to assert "constitutional rights to a speedy trial, challenge a denial of a pretrial motion to suppress, or make a collateral estoppel claim that does not allege a double jeopardy violation." *Id.* at 620. The court reasoned "[t]hese issues are better addressed by a post-conviction appeal." *Id.*

Additionally, the court of criminal appeals has stated that "pretrial habeas is generally unavailable 'when the resolution of a claim may be aided by the development of a record at trial.'" *Ex parte Ingram*, 533 S.W.3d at 892 (quoting *Ex parte Doster*, 303 S.W.3d at 724). According to the court, the "only recognized exception to the general prohibition against record development on pretrial habeas is when the constitutional right at issue includes a right to avoid trial, such as the constitutional protection against double jeopardy." *Id.*

Recently, in *Ex parte Dominguez Ortiz*, 2023 WL 1424651, at *1, we considered whether a noncitizen, who was arrested for trespassing on private property pursuant to OLS and charged with criminal trespass, had brought a cognizable pretrial habeas claim. The appellant had been released on bond and then removed from the United States. *Id.* He filed a pretrial application for writ of habeas corpus, seeking dismissal of his criminal trespass charge because of purported

violations of his due process right under the Fifth Amendment and his right to counsel under the Sixth Amendment. *Id*. He argued (1) the State had taken an active role in facilitating his expulsion or deportation, and (2) because of his removal, he was unable to prepare or return to his in-person trial setting without federal authorization. *Id*. Importantly, *Dominguez Ortiz* did not assert a selective-prosecution claim under the Constitution's Equal Protection Clause or the Texas Constitution's Equal Rights Amendment.

In holding that the appellant's pretrial habeas claim was not cognizable, we reasoned that his claims were "as-applied challenges with unresolved factual matters" that would be aided by development of a record. *Id*. at *6. While we recognized the court of criminal appeals had "allowed exceptions for as-applied claims to be asserted in pretrial habeas writs," we emphasized it did so when "the resolution of the claim in the applicant's favor would result in 'immediate release'" and when "the constitutional right at issue include[d] a right to avoid trial." *Id*. (quoting *Ex parte Ingram*, 533 S.W.3d at 892). In looking at these exceptions for as-applied claims, we concluded further factual development of the record was necessary before we could determine whether resolution of the appellant's claim would result in the appellant's immediate release. *See id*. "[E]ven as to remedy, further record development may be necessary, and a tailored remedy may show habeas relief to be improper." *Id*. We noted that "[r]ecord development with a pretrial writ, nevertheless, may be appropriate when 'the particular constitutional right at issue . . . is the type that would be effectively undermined if not vindicated prior to trial.'" *Id*. at *6 (quoting *Ex parte Perry*, 483 S.W.3d 884, 896 (Tex. Crim. App. 2016) (plurality op.)). However, we concluded that the appellant's right to counsel claim under the Sixth Amendment could "be vindicated after trial," and that his due process claim under the Fifth Amendment "is not a type of claim that is 'effectively undermined if not vindicated prior to trial' because the right to prepare for trial does not encompass a right to avoid trial." *Id*. at *7 (quoting *Ex parte Perry*, 483 S.W.3d at 896). Finally, we concluded

judicial economy considerations did not weigh in favor of determining the appellant's pretrial habeas claim was cognizable because the "aid of further factual development to resolving appellant's claims suggests judicial economy will benefit our refusal to consider appellant's claims on pretrial habeas." *Id*. at \*8. We thus held the appellant's pretrial habeas claim was not cognizable.

Our holding in *Ex parte Dominguez Ortiz* rested on "important facts [being] in dispute or undeveloped." *See id*. at \*4. Here, however, the facts are undisputed. The testimony was consistent that the State, for purposes of OLS, had not built detention centers to hold females. DPS, through Captain Betancourt's guidance email, had instructed state troopers arresting individuals for criminal trespass as part of OLS to not arrest any women. Captain Betancourt testified "guidance" to him meant "a set of rules or set of expectations that should be adhered to or that need to be adhered to." He testified he expected the state troopers working under him to follow his guidance. Further, the statistics provided showed that 4,076 people had been arrested for misdemeanor offenses with respect to OLS and not a single person arrested was female. Similarly, the statistics showed that 470 individuals had been arrested in Maverick County (the county in which Aparicio was arrested) for misdemeanor offenses with respect to OLS; none of the individuals arrested was a woman. Finally, every state trooper who testified was consistent in explaining that he had arrested men for criminal trespass but had never arrested a woman for the same offense. These state troopers consistently explained that they did not arrest women for criminal trespass because the detention facilities modified for purposes of OLS did not hold females. Thus, this record is fully developed and undisputed with regard to the practice of not arresting women for the offense of criminal trespass with respect to OLS.

Further, we note that Aparicio's constitutional right to equal protection would be effectively undermined if not vindicated before trial. *See Ex parte Weise*, 55 S.W.3d at 619-20 (considering whether the constitutional protection "would be effectively undermined" if the issue

was not cognizable in a pretrial habeas proceeding). "[A] conviction is void under the Equal Protection Clause if the prosecutor deliberately charged the defendant on account of his race" or other prohibited classification like gender. *Vasquez v. Hillery*, 474 U.S. 254, 264 (1986); *see Lovill*, 287 S.W.3d at 81 (applying *Vasquez* in context of gender discrimination). Thus, if Aparicio's selective-prosecution claim on the basis of equal protection has merit, any conviction resulting from a trial would be void, and he would be entitled to release. *See Vasquez*, 474 U.S. at 264; *Lovill*, 287 S.W.3d at 81; *see also In re Aiken Cnty.*, 725 F.3d 255, 264 n.7 (D.C. Cir. 2013) ("If the Executive selectively prosecutes someone based on impermissible considerations, the equal protection remedy is to dismiss the prosecution[.]") (Kavanaugh, J.). In this manner, Aparicio's selective-prosecution claim is similar to a double-jeopardy claim. Like a double jeopardy claim, when a selective-prosecution claim is established, prosecution itself is forbidden. *See Ex parte Perry*, 483 S.W.3d at 896 (explaining a defendant with a valid double jeopardy claim should not "[be] forced to endure a trial"); *In re Aiken Cnty.*, 725 F.3d at 264 n.7 (noting that remedy in equal protection selective prosecution claim is to dismiss the prosecution); *cf. Ex parte Boetscher*, 812 S.W.2d 600, 604 (Tex. Crim. App. 1991) (dismissing indictment after sustaining pretrial habeas applicant's equal protection claim). Additionally, as any resulting conviction would be void, allowing pretrial writs on selective-prosecution claims would also serve judicial efficiency by avoiding entry of void judgments. *See Vasquez*, 474 U.S. at 264; *In re Aiken*, 725 F.3d at 264. n.7.

Judicial economy will also be served for other reasons. Resolution of Aparicio's pretrial habeas claim will not be aided by the development of a record at trial. *See Ex parte Ingram*, 533 S.W.3d at 892 (explaining that pretrial habeas is generally unavailable when the resolution of a claim may be aided by the development of a record at trial). In his pretrial habeas claim, Aparicio argues he was discriminated against on the basis of sex in violation of his equal protection rights under both the United States and Texas Constitutions. In doing so, he brings a claim of selective

prosecution, arguing that the criminal trespass statute was applied selectively against men as opposed to women in violation of his constitutional rights. "[A] selective-prosecution claim is not a defense on the merits to the criminal charge, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. Thus, whether Aparicio is, in fact, guilty of criminal trespass is irrelevant to his pretrial habeas claim, and the development of a record at trial will not aid the determination of his claim. *See id*. Accordingly, Aparicio's selective-prosecution claim is distinct from an as-applied challenge to a statute, which the court of criminal appeals has held is not cognizable in a pretrial writ. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. 2010). Unlike a claim bringing an as-applied challenge to a statute, the merits of Aparicio's criminal prosecution are irrelevant to his selective-prosecution claim. *See Armstrong*, 517 U.S. at 463. Thus, even though Aparicio's selective-prosecution claim required development of a record, his claim is more appropriate in a pretrial setting from a standpoint of judicial efficiency.

Indeed, we note the court of criminal appeals has allowed claims to be brought through pretrial habeas even though those claims give rise to evidentiary records. *See Ex parte Perry*, 483 S.W.3d at 902; *Ex parte Nuncio*, 662 S.W.3d 903, 920 (Tex. Crim. App. 2022). For example, an applicant bringing an overbreadth facial challenge to a statute "must demonstrate from its text and from *actual fact* 'that a substantial number of instances exist in which the Law cannot be applied constitutionally.'" *Ex parte Perry*, 483 S.W.3d at 902 (quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988)) (emphasis added); *see also N.Y. State Club Ass'n*, 487 U.S. at 14 (explaining it could not hold the statute was substantially overbroad because "no record was made" to demonstrate assertion that substantial number of instances exist in which statute could not be applied constitutionally). Despite the need to develop a record, the court of criminal appeals

has held facial overbreadth challenges to statutes are cognizable in a pretrial habeas. *See Ex parte Perry*, 483 S.W.3d at 902; *Ex parte Nuncio*, 662 S.W.3d at 920.

Finally, we note that Aparicio's selective-prosecution claim is also similar to another claim that the court of criminal appeals has determined defendants can raise in a pretrial writ: a facial vagueness challenge to a statute. *See Ex parte Nuncio*, 662 S.W.3d at 914, 921; *see also Ex parte Jarreau*, 623 S.W.3d 468, 471-72 (Tex. App.—San Antonio 2020, pet. ref'd). Like a selective-prosecution claim, a defendant bringing a vagueness challenge may argue that a statute's vagueness has impermissibly resulted in selective enforcement. *See State v. Gambling Device*, 859 S.W.2d 519, 524-25 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Such a statute is unconstitutionally vague when it "encourages arbitrary enforcement" by "fail[ing] to provide reasonably clear guidelines, thereby giving enforcement officials unbounded discretion to apply the law selectively." *Id*. at 525. If a vagueness challenge asserting selective enforcement by law enforcement can be brought in a pretrial writ, we see no principled reason to deny pretrial habeas to an applicant like Aparicio who alleges *actual* selective enforcement of a statute under clear, but unconstitutional guidelines.

For the above reasons, we conclude Aparicio's selective-prosecution claim on the basis of equal protection is the type of claim "in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review." *Ex parte Ingram*, 533 S.W.3d at 891-92. Having determined Aparicio's claim is cognizable, we now consider the merits of his appeal.

### B.  Aparicio's Burden

As noted, to establish a prima facie case of selective prosecution, Aparicio must show "the prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608). To establish a

discriminatory effect in a case based on gender discrimination, Aparicio had to show similarly situated individuals of the opposite sex were not prosecuted for the same conduct. *See id*. (stating standard with respect to race discrimination); *Robles*, 585 S.W.3d at 597 (applying *Armstrong* standard to gender discrimination). Aparicio met this burden. As noted, the undisputed evidence at the habeas hearing showed that Aparicio was found with a group of men and women and that the women were not charged with criminal trespass while the men were so charged. The evidence was also undisputed that state troopers in Maverick County have been routinely charging men with criminal trespass as part of OLS and not charging women found in the exact same circumstances. We therefore hold that Aparicio has shown a discriminatory effect.

To demonstrate that the prosecution was motivated by a discriminatory purpose, Aparicio had to show that the State's selection of him for prosecution was based on an impermissible consideration like gender. *See Wayte*, 470 U.S. at 610; *Lovill*, 287 S.W.3d at 79. "'Discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action *at least in part 'because of,' not merely 'in spite of,'* its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (emphasis added) (quoting *Personnel Administrator v. Feeney*, 442 U.S. 256, 279 (1979)).

> Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the "dominant" or "primary" one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is not just another competing consideration. When there is a proof that *a discriminatory purpose has been a motivating factor in the decision*, this judicial deference is no longer justified.

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977) (emphasis added).

The evidence was undisputed in this case that the decision to prosecute Aparicio, and not the women found allegedly trespassing with him on private property, was motivated by his sex. The trooper who arrested Aparicio testified he did not arrest the women found with Aparicio because the detention facility erected pursuant to OLS would not hold women. The trooper's testimony was consistent with the other troopers who testified. As part of OLS, they did not arrest women for criminal trespassing because the detention facility would not hold women. Their testimony was consistent that although they could have contacted the county jail in which the women were found, which they admitted did hold women (at least in some circumstances), they did not contact the county jail and instead released the women to border patrol. The record showed their actions were consistent with Captain Betancourt's email, which included instructions not to arrest women for criminal trespassing. As noted, the record is clear that Captain Betancourt's guidance email was followed in practice: as part of OLS, 4,076 people had been arrested for misdemeanor offenses and not a single individual arrested was a woman. In Maverick County, specifically, 470 people had been arrested for misdemeanor offense as part of OLS. None of these 470 people was a woman. We hold Aparicio has met his burden of showing that his gender was a motivating factor in his arrest.

In so holding, we find the following arguments made by the State unpersuasive. First, the State contends it has not discriminated against men because all "violators were taken into custody." According to the State, "[f]emale offenders were released by Texas law enforcement, but they were released to the custody of federal law enforcement so that they could be charged under that particular system." However, that the women were released to federal immigration authorities does not mean that the State treated men and women equally. The men charged face time served in jail under state law; the women do not. *See* TEX. PENAL CODE §§ 12.50(a), 30.05(a); TEX. GOV'T CODE § 418.014.

Second, the State argues Aparicio has not met his burden because the record shows that some males were not arrested pursuant to OLS and, like the women, were released to border patrol. In particular, the State emphasizes that men over sixty years of age, underaged males, and males accompanied by minor children were not arrested and charged pursuant to OLS. Thus, according to the State, other factors besides sex were used to classify individuals pursuant to OLS, including age and family units. However, as noted previously, to state his prima facie claim, Aparicio need only show that the State's policy was motivated by an unjustifiable standard. *See Wayte*, 470 U.S. at 608. Here, regardless of whether the State also discriminated on the basis of age, minority, or family unit, Aparicio has shown that the State expressly discriminated on the basis of sex. With this record, he has met his burden of showing a prima facie case. *See id.*; *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982) ("Because the challenged policy expressly discriminates among applicants on the basis of gender, it is subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment."); *see also Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1748 (2020) (refuting mistaken premise that Title VII, which has similar language to the Texas Equal Rights Amendment, "applie[s] only when sex is the sole or primary reason for an employer's challenged adverse employment action").

Finally, we note that the trial court, on the record, based its decision in denying Aparicio's habeas claim on the fact that the State "could" still charge the women with criminal trespass, explaining that the statute of limitations had not yet passed. The trial court then stated it did not "think there [was] a chance" the State would prosecute the women, but emphasized the *possibility* the State could still charge the women in question. We find the trial court's reasoning unpersuasive. First, the record is clear the State has no intention of prosecuting the women found allegedly trespassing as part of OLS. The troopers testified that they had not recorded any identifying information in their reports about the women in question and had merely released the women to

border patrol. Second, that the State *could possibly in the future* prosecute these women is irrelevant to Aparicio's gender discrimination claim. The State has *already* treated Aparicio differently from similarly situated women on the basis of his sex by arresting and charging him. *See Gonzalez v. Police Dep't*, 901 F.2d 758, 762 (9th Cir. 1990) ("Curative measures simply do not tend to prove that a prior violation did not occur."); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 346 (10th Cir. 1975) (explaining that conduct after the filing of charges "does not constitute cogent evidence of lack of prefiling discrimination" and if "taken into account at all, it might tend to show the existence of prior discrimination and an effort to repair the harm after discovery"). Finally, the trial court's reasoning in this case would eviscerate equal protection rights. When impermissibly discriminating against one group in violation of the Constitution, the State could always justify itself by claiming that it might hypothetically, in the future, treat the rest of the population the same way. This slippery slope could lead to, for example, the State choosing to prosecute only non-Caucasian people for certain crimes while at the same time justifying its actions by arguing it could possibly, in the future, also prosecute Caucasian people. We have found no case that follows this reasoning and decline to do so. We therefore hold Aparicio met his burden of showing a prima facie case of discriminatory effect and discriminatory purpose. *See Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608).

### C. State's Burden

As Aparicio met his burden of showing a prima facie claim for selective prosecution on the basis of gender discrimination, the burden shifts to the State to justify the discriminatory treatment. *See Ex parte Quintana*, 346 S.W.3d at 685; *Lovill*, 287 S.W.3d at 79. With regard to Aparicio's federal equal protection claim on the basis of gender discrimination, the State's discriminatory conduct is subject to intermediate scrutiny. *See Clark*, 486 U.S. at 461; *Casarez*, 913 S.W.2d at 493. Thus, the State must demonstrate that the discriminatory classification is

substantially related to an important governmental interest. *See Clark*, 486 U.S. at 461; *Casarez*, 913 S.W.2d at 493.

With regard to Aparicio's equal protection claim under the Texas Constitution, the State's discriminatory conduct is subject to strict scrutiny. *See Bell*, 95 S.W.3d at 257 (explaining that the Equal Rights Amendment to the Texas Constitution was "designed expressly to provide protection which supplements the federal guarantees of equal treatment" and specifies "sex, race, color, creed, or national origin" as protected classes). Under that standard, "the challenged action cannot stand unless it is narrowly tailored to serve a compelling governmental interest." *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012) (quoting *Bell*, 95 S.W.3d at 257).

In its brief, the State argues "the emergency situation on Texas's southern border" justifies its discriminatory actions. However, it is clear from the record that the trial court never reached the merits of this issue. The trial court stated on the record that it had determined Aparicio had not met his prima facie burden. Thus, the State was not required at the hearing to justify its discriminatory actions. As the trial court has not had an opportunity to determine whether the State's discriminatory classification was justified under intermediate scrutiny (Aparicio's federal claim) and strict scrutiny (Aparicio's state claim), we reverse the trial court's denial of Aparicio's petition for writ of habeas corpus and remand the cause to the trial court. *See Lovill*, 287 S.W.3d at 82. On remand, the trial court should require the State to respond to both federal and state selective-prosecution claims on the basis of equal protection, and the trial court should make specific findings of fact and conclusions of law setting out its rulings on whether the State meets its burden of proof to justify its discriminatory treatment of Aparicio. *See id.*

**CONCLUSION**

Because the trial court erred in finding that Aparicio did not meet his prima facie burden, we reverse the trial court's order denying Aparicio's petition for writ of habeas corpus and remand the cause to the trial court for further proceedings consistent with this opinion. *See id.* at 82-83.

Liza A. Rodriguez, Justice

PUBLISH