**REVERSE AND REMAND; Opinion Filed June 22, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00716-CR**

**JOHN PAUL CRUMLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82474-2022**

## OPINION

Before Justices Pedersen, III, Garcia, and Kennedy
Opinion by Justice Kennedy

John Paul Crumley appeals the judgment in his conviction for online solicitation of a minor. In his first of three issues, he argues the trial court abused its discretion by excluding defensive evidence that would have negated the mens rea element of the charged offense. In his third issue, appellant challenges the constitutionality of the solicitation statute as it applies to him. We reject his challenge to the statute, but we agree the exclusion of evidence was erroneous and harmful, and thus we sustain his first issue. We reverse the judgment and remand

the cause to the trial court for a new trial. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Appellant was charged with the offense of online solicitation of a minor. The case proceeded to trial before a jury. At trial, appellant testified he had struggled with social interactions since childhood. He had been born with a genetic condition rendering him legally blind to which he attributed some of his difficulty socializing with his peers. Appellant testified that he preferred communicating and making friends online. After getting divorced from his wife of several years, appellant began a romantic relationship with a person he knew as "Jasmine," which lasted for several years, despite the fact that they never met in person. At some point, appellant became aware that the person he knew as Jasmine was sending him pictures she claimed to be of herself but were actually of another person, and the relationship ended with Jasmine's ceasing to communicate with him. Appellant was upset that he had "invested years in somebody that didn't exist . . . and now I had to tell everybody that they were right and that I was an idiot."

In late 2018 or early 2019, appellant attempted to begin another relationship online with a person he knew as "Lex," who he met on a dating website. They arranged to meet more than once, but each time Lex failed to appear and offered an excuse. When appellant questioned whether Lex was "messing" with him, she accused him of "catfishing" her.

–2–

In May 2019, appellant began an online conversation on an application known as Whisper with an account attributed to "Alyssa TX 13."  According to appellant, he was upset about being deceived by two people he had met online and determined he would go on Whisper to find another liar to catch and make that person admit he or she was lying to him.  When appellant asked Alyssa how her day was, she responded, "good, im 13 u ok with that?"  Appellant answered, "If you're ok with me being 41."  Appellant continued to exchange messages with Alyssa, asking her if she had a boyfriend, what kinds of guys she liked, and for her phone number to text her.  Appellant and Alyssa exchanged text messages over the next several days, with appellant telling Alyssa he liked her, wanted to be in a sexual relationship with her, and wanted to meet her in person.  Alyssa requested he send her a picture of birth control, and appellant did so.  The two arranged to meet in person on May 14.  That day, appellant drove to the designated meeting place, a pharmacy, and texted Alyssa to come out in front of the store.  Appellant was arrested in the parking lot of the store.  The person exchanging messages as "Alyssa TX 13" was in fact Detective Lee McMillian, an investigator with the child exploitation unit of the Collin County Sheriff's Office.

According to appellant, he believed the person he knew as Alyssa was an adult and not the 13-year-old she purported to be.  He pointed to certain of Alyssa's statements as "proof" she was not a minor, and he stated that he had looked up the phone number she gave to him and determined it was not a cell phone number but

instead a landline. Appellant also conceded that when he was arrested, his explanation for his presence at the pharmacy was that he planned to meet with the teenaged Alyssa to tell her how dangerous it is to meet up with people from the Internet and to tell her not to get involved with older guys. Appellant stated that law enforcement officers told him that they had a mother and daughter across the parking lot and that he accepted what the law enforcement officers said was true. On redirect examination, appellant testified that he was afraid for his life after being confronted with as many as three deputies who had pointed guns at him before placing him in handcuffs and questioning him.

The person whom appellant knew as Lex testified for the defense, confirming she had lied to him about who she was—her name, likeness, and occupation—and repeatedly failed to meet him in person at agreed upon times and locations. She also testified that they continued their relationship even after she failed to show at different arranged meetings. In February 2021, she told him the pictures she had sent him were not of her, and in February or March of 2022, they met in person for the first time and agreed to end the relationship.

The jury found appellant guilty of the offense of online solicitation of a minor as alleged in the indictment and assessed his punishment at six years' imprisonment. The trial court sentenced him in accordance with the jury's verdict. This appeal followed.

ANALYSIS

## I. Solicitation Statute is Constitutional as Applied

We address appellant's third issue in which he challenges the constitutionality of the solicitation statute as it applies to him before his other issues because in the event it is meritorious, we would render a judgment of acquittal rather than remand if his other issues have merit. *See, e.g.*, *O'Reilly v. State*, 501 S.W.3d 722, 726 (Tex. App.—Dallas 2016, no pet.) (addressing legal-sufficiency issue before remaining issues) (citing *Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010) and *Owens v. State*, 135 S.W.3d 302, 305 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). *Compare Ex parte Martin*, 74 S.W.2d 1017, 1020 (1934) (reversing judgment and ordering appellant discharged after concluding statute unconstitutional), *with Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (reversing and remanding for new trial after concluding trial court erred by excluding evidence favorable to defense).

An "as applied" challenge to the constitutionality of a statute asserts that a statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular circumstances. *Faust v. State*, 491 S.W.3d 733, 743 (Tex. Crim. App. 2015). When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature acted reasonably in enacting it. *See id.* at 743–44. Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the challenger to first show

that, in its operation, the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 916 (Tex. Crim. App. 2011) (orig. proceeding). Therefore, any court considering an "as applied" challenge to a statute must look at the challenger's conduct alone to determine whether the statute operated unconstitutionally. *See id.*

Appellant was charged with and convicted of online solicitation of a minor under Penal Code § 33.021, which provides in relevant part:

> A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

TEX. PENAL CODE ANN. § 33.021(c).

As support for this issue, appellant relies on an opinion from the court of criminal appeals in which the court examined a facial challenge to the constitutionality of a former version of the same statute. In *Ex parte Ingram*, 533 S.W.3d 887, 899 (Tex. Crim. App. 2017), the court addressed a complaint that the statute's definition of "minor" allowed the online solicitation statute to encompass role play about age between adults. In that case, the appellant urged the definition was overbroad in violation of the First Amendment. *See id.* at 894 (noting "'Overbreadth' is a First Amendment doctrine that allows a facial challenge to a statute even though the statute might have some legitimate applications."). Before rejecting that appellant's challenge, the court considered several hypothetical

–6–

scenarios involving an adult complainant representing himself or herself to be a minor.  *See id.* at 900.  The court stated that only one of the listed hypotheticals "might constitute an offense under the statute *and* might be protected by the First Amendment."  *See id.* (emphasis in original).  That hypothetical was:

> (e) The complainant is an undercover police officer who is actually 40 years old. She says that she is 16 years old. Unbeknownst to her, however, the defendant knows the complainant's actual age and knows that she is unaware of his knowledge of her age.

*Id.*  Appellant argues that hypothetical scenario "mirrors almost exactly the situation here," in which his defensive theory was that he believed Alyssa was an adult lying about being a minor, but Alyssa was in fact an undercover police officer, such that his speech was constitutionally protected and application of the online solicitation statute to that speech is unconstitutional in violation of the First Amendment.

We disagree.

In *Ingram*, the court was examining a prior version of the statute that defined minor as "(A) an individual who represents himself or herself to be younger than 17 years of age; or (B) an individual whom the actor believes to be younger than 17 years of age."  *See* 533 S.W.3d at 895 (quoting prior version of PENAL § 33.021(a)(1)).  In contrast, the current version of the statute defines minor as "(A) an individual who is younger than 17 years of age; or (B) an individual whom the actor believes to be younger than 17 years of age."  *See* PENAL § 33.021(a)(1). In this case, the jury was instructed on the current definition of "minor," such that in order to convict appellant, it had to find that Alyssa was actually younger than 17

–7–

years of age or that appellant believed she was younger than 17 years of age and thus reject his testimony and defensive theory.

Other than his reliance on *Ingram*, appellant does not offer any argument or authority to "show that, in its operation, the statute is unconstitutional as to him in his situation." *See Lykos*, 330 S.W.3d at 916. Accordingly, he has not met his burden, and thus, we conclude the online solicitation statute is not unconstitutional as applied to appellant.

We overrule his third issue.

## II. Erroneous Exclusion of Evidence

In his first issue, appellant argues the trial court abused its discretion by excluding defensive evidence that would have negated the mens rea element of the charged offense. As discussed above, appellant was charged with and convicted of online solicitation of a minor under a statute that provides in relevant part:

> A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

PENAL § 33.021(c). At trial, appellant sought to offer evidence regarding his diagnosis with autism and how that condition affects his perception and thought processes. He argues that this evidence would have negated the elements of the offense that he knowingly solicited someone he believed to be a minor with the intent

–8–

that the minor engage in sexual activities. The State filed a motion in limine regarding the introduction of evidence or comments alluding to:

> Any reference to the Defendant's mental state or condition of his mind before the offense, at the time of the offense, or after the offense, including but not limited to whether he suffered from paranoid delusions, was acting unusual, or has any mental disease or defect, including Autism Spectrum Disorder.

The State argued such evidence was not relevant and alternatively that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or was needlessly cumulative evidence. *See* TEX. R. EVID. 401, 403. The trial court permitted defense counsel to state during his opening statement that appellant is "autistic and processes information differently," does not pick up on social cues, and "once he got fixated on this idea [that Alyssa was an adult lying about being a minor], the warning signs of how [this] might . . . look or any of those things never entered his mind." But, the trial court ultimately excluded testimony from appellant's two brothers, as well as expert testimony for the defense.

The record contains testimony from those witnesses, created as a bill of proof. Dr. Joshua Masino, who attested to expertise in neuropsychology, testified to examining appellant and diagnosing him with autism. He also testified as to general characteristics of those with autism and how such characteristics presented in appellant. According to Dr. Masino, appellant has rigid thinking "so that once something becomes fixed in his mind, it's hard for him to get off of it." Dr. Masino

also testified that appellant has difficulty imagining how others perceive things, and that, at times, he can put too much emphasis on the short term without consideration for the long term. Appellant's brothers testified as to their observations of their brother's difficulty reading social cues and his rigid thinking such that they struggled to convince him to change his mind in spite of what the brothers saw as red flags. In particular, the brothers described appellant's two online relationship experiences where the romantic partner's images appeared to them not to be genuine and the romantic partner's excuses for failing to meet in person not to be credible. In short, they had watched their brother be "catfished" in the years leading up to the offense by one person then another, both claiming to be beautiful young women who consistently failed to meet with appellant in person.

Texas law, like that of all American jurisdictions, presumes that a criminal defendant is sane and that he intends the natural consequences of his acts. *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008). Insanity is the only "diminished responsibility" or "diminished capacity" defense to criminal responsibility in Texas. *See id.* at 593. Other "diminished mental-state" defenses, if allowed, would permit exoneration or mitigation of an offense because of a person's supposed psychiatric compulsion or an inability to engage in normal reflection or moral judgment. *See id.* But, both physical and mental conditions may affect a person's perception of the world just as much as they may affect his rational understanding of his conduct or his capacity to make moral judgments. *Id.* Courts routinely admit evidence of a

physical abnormality offered to prove a lack of mens rea. *Id.* Such evidence might be elicited from the defendant, a lay witness—mother, brother, friend, or neighbor— or from an expert—an optometrist, physician, etc. *Id.*

In *Ruffin*, the court of criminal appeals concluded that evidence of a defendant's mental delusions, causing him to see a trespasser instead of a police officer, was relevant to the mens rea element of the offense with which he was charged and convicted, aggravated assault of a police officer. *See* 270 S.W.3d at 593–94. The court compared this evidence of mental delusions to that of blindness, which "would be relevant and admissible to rebut the State's assertion that the defendant intended to shoot at a police officer." *See id.* at 594 ("If, instead of blindness, the defendant suffers from mental delusions such that he sees a 'trespasser' . . . when everyone else around him sees a police officer, he cannot be convicted of intentionally shooting at a police officer, although he may be convicted of intentionally shooting at a trespasser.").

We conclude the evidence here was relevant to rebut the mens rea element of whether appellant knowingly solicited someone he believed to be a minor with the intent that the minor engage in sexual activities. Similarly to the defendant in *Ruffin* and the court's example of a blind defendant, appellant offered evidence that his perception of the world was affected by autism, which may be probative of whether he believed Alyssa was a minor and whether he intended to engage her in sexual activities. *See id.*

Although the trial court judge expressly stated he was not excluding the evidence under Rule 403, we examine whether the evidence would have been properly excluded under that rule, as we may affirm a trial court's ruling if it is correct on any legal theory applicable to the case, even one that was not mentioned by the trial court or the appellee. *Martell v. State*, 663 S.W.3d 667, 672 (Tex. Crim. App. 2022) ("This principle is known as the 'right ruling, wrong reason' doctrine."); *see also Ruffin*, 270 S.W.3d at 597 (holding "expert evidence that would explain appellant's mental disease and when and how paranoid delusions may distort a person's auditory and visual perceptions is admissible as it relates to whether appellant intended to shoot at police officers, unless that evidence is otherwise barred by evidentiary rules").

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. In conducting a Rule 403 analysis, the court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018). "[T]hese factors may well blend together in practice." *Gigliobianco v. State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006).

Here, we have already discussed the probative force of the excluded evidence and note appellant's need for same would be, at least in part, to put his autism disorder into a mental-disease context and explain its psychological significance. *See Ruffin*, 270 S.W.3d at 597. As for any tendency of the evidence to confuse or distract the jury from the main issue or to be given undue weight, the *Ruffin* court expressed "confidence that our Texas judges and juries are sufficiently sophisticated to evaluate expert mental-disease testimony in the context of rebutting *mens rea* just as they are in evaluating an insanity or mental-retardation claim." *See id.* at 595 (italics in original). Further, we do not conclude the evidence would consume an inordinate amount of time or repeat what had been admitted, given that the trial court otherwise excluded evidence referring to appellant's autism diagnosis and how it affected his thought processes.

Accordingly, we conclude the exclusion of the testimony from appellant's brothers and Dr. Masino was error. [1]

---

[1] The record also contains an offer of proof of evidence from a second expert in neuropsychology, Dr. Annette Jerome, but we conclude examination of whether her testimony was improperly excluded is not necessary to the disposition of this appeal and thus decline to discuss whether its exclusion was reversible error. *See* TEX. R. APP. P. 47.1.

Having concluded the exclusion of evidence was erroneous, we now consider whether the error harmed appellant. Appellant argues the error in excluding the testimony of the experts and his brothers should be analyzed for constitutional error because their testimony formed a vital core to his defensive theory. At oral argument, the State conceded that much of the proffered testimony was erroneously excluded but repeated the arguments in its brief that any such error was not constitutional and did not affect appellant's substantial rights.

Generally, exclusion of a defendant's evidence is non-constitutional error, except when the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *See Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). Exclusion of evidence might rise to the level of a constitutional violation if: (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense. *See Walters*, 247 S.W.3d at 219 (citing *Potier*, 68 S.W.3d at 665). In such a case, Rule 44.2(a), the standard for constitutional errors, would apply. *Id.* Rule 44.2 reads:

> (a) *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment

unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

TEX. R. APP. P. 44.2 (a), (b).

Either way, it is the responsibility of the appellate court to assess harm after reviewing the record, and the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on the appellant or the State. *Id.* at 219. Of course, "the parties may assist by suggesting how the appellant was harmed (or not), but it is the responsibility of the reviewing court to decide whether it is likely that the error had some adverse effect on the proceedings." *See id.* (quoting *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001)).

Here, we agree with appellant that the exclusion of the testimony of his brothers and Dr. Masino was constitutional error because the exclusion of that evidence effectively prevented appellant from presenting his defense. *See Walters*, 247 S.W.3d at 219 (citing *Potier*, 68 S.W.3d at 665). To be sure, he was able to present evidence that he is not good at social interactions or picking up on facial expressions and that he once asked someone to teach him how to make friends and be social. He also stated that he had been catfished once and was upset and felt foolish when that relationship ended with the other person "ghosting" him. He stated that after he suspected he was being catfished a second time, he was very angry with "Lex" and about possibly being fooled again. According to appellant, he "installed

–15–

an application called Whisper because . . . I knew it was full of liars" in order to redirect his anger towards finding another liar to catch and make that person admit he or she was lying to him. He testified as to his firm belief that he was talking to an adult when he was communicating with Alyssa and identified the information and messages he thought confirmed that belief. But, appellant's testimony did not include anything about his thought processes in terms of rigid thinking or difficulty changing his mind once it has been made up even when confronted with red flags or contrary evidence.

Thus, we conclude that without the excluded evidence appellant was unable to fully develop his defensive theory that his autism caused him to have extreme difficulty changing his belief that he was speaking to an adult lying about being a minor even when faced with statements from "Alyssa" that "she" was 13 and in school. He was similarly unable to present evidence to the jury that his autism made it difficult for him to imagine how others might perceive the same situation he perceives, such that he would have had difficulty realizing that others might perceive his chatting online with someone who purported to be 13 to be illegal conduct. *Cf. Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005) (no error excluding testimony of appellant's paranoia because, instead of negating mens rea, evidence only presented excuse for crime); *Gassaway v. State*, No. 05–07–00922–CR, 2009 WL 1547756, at *5 (Tex. App.—Dallas June 4, 2009, pet. ref'd) (not designated for publication) (no error when testimony regarding bipolar disorder would have been

repetitive of appellant's testimony that he suffered from bipolar disorder and where expert expressed no opinion whether conduct was result of appellant's bipolar disorder).

In reviewing for constitutional harm, we question whether the constitutional error was actually a contributing factor in the jury's deliberation, calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence, and ask ourselves whether the error could not have affected the jury. *See Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020). As discussed above, the excluded evidence was not repetitive of any other evidence in the record and, therefore, we cannot conclude its exclusion did not contribute to appellant's conviction.[2] *See* TEX. R. APP. P. 44.2 (a).

Accordingly, we sustain appellant's first issue and reverse and remand this case for further proceedings. In light of this conclusion, we need not address his second issue of whether the trial court erred by denying defense counsel's requested instruction on mistake of fact. *See* TEX. R. APP. P. 47.1.

---

[2] There was discussion during voir dire of a character, Dr. Sheldon Cooper, on a show called *Big Bang Theory*, and how that character is defined as highly intelligent but does not "realize when he is socially unacceptable" because he has Autism Spectrum Disorder. And, defense counsel stated during his opening statement that appellant is "autistic and he processes information differently." But, the charge instructed the jury "that any statements of counsel made during the course of the trial or during argument are not evidence, and if not supported by the evidence . . . are to be wholly disregarded." And, we presume the jurors understood and followed the court's instructions in the jury charge absent evidence to the contrary. *See Santillana v. State*, No. 05-16-01046-CR, 2018 WL 4784570, at *3 (Tex. App.—Dallas Oct. 4, 2018, no pet.) (mem. op., not designated for publication) (citing *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002)).

## CONCLUSION

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

PUBLISH
TEX. R. APP. P. 47
220716F.P05

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN PAUL CRUMLEY, Appellant

No. 05-22-00716-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas Trial Court Cause No. 401-82474-2022.

Opinion delivered by Justice Kennedy. Justices Pedersen, III and Garcia participating.


Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for a new trial.


Judgment entered this 22nd day of June, 2023.